IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| ROBERT ALLEN, et al., | ) | CIVIL NO. S-03-1358-DAE-RJJ |
| | ) | Consolidated with |
| Plaintiffs, | ) | CIVIL NO. S-05-0472-DAE-RJJ |
| | ) | |
| vs. | ) | |
| | ) | |
| J. GREGORY DAMM, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER: (1) GRANTING IN PART AND DENYING IN PART FEDERAL
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT AND (2) DISMISSING WITH PREJUDICE
PLAINTIFFS JOHN KAHRE, BRANDON KAHRE, JULIO VARGAS, AND
<u>GUSTAVO GUTIERREZ</u>

Pursuant to Local Rule 78–2, the Court finds this matter suitable for

disposition without a hearing.  After reviewing the motions as well as the

supporting and opposing memoranda, the Court **GRANTS IN PART AND**

**DENIES IN PART WITHOUT PREJUDICE** the Federal Defendants' Motion to

Dismiss or, in the Alternative, for Summary Judgment ("Motion").  (Doc. # 254.)

## BACKGROUND

This litigation has been on-going for over eight years and the parties are all very familiar with the underlying facts that gave rise to Plaintiffs' claims. The Court will therefore be brief in reviewing them.

I.      Factual Background

Plaintiffs are a self-proclaimed group of individuals boycotting the Federal Reserve System by using gold and silver coins manufactured by the United States Mint as a medium of exchange and "thereby avoiding income taxes imposed due to the exchange rate between gold and silver dollars and Federal Reserve Notes denominated as if they were dollars." ("Pro Order," Doc. # 56 at 2.) Plaintiffs have filed suit against a variety of defendants for alleged constitutional violations. Plaintiffs originally named as defendants the United States of America, two of its executive subdivisions—the United States Department of Justice ("DOJ") and the Internal Revenue Service ("IRS")—as well as several individuals who work for the federal government including Assistant United States Attorney Gregory Damm ("Damm"). (Id.)  The Complaint also originally named high ranking officials in the DOJ and IRS, federal strike force/swat team members, and NLVPD police officers as defendants. (Id.)

Plaintiffs' allegations arise out of three searches Defendants conducted on various locations in Las Vegas, Nevada, on May 29, 2003.  Plaintiffs assert that Defendants conducted these searches pursuant to a policy promulgated by high ranking DOJ and IRS policy makers.  (Id.)  Plaintiffs allege this policy was designed to retaliate against organizations that criticize the government's fiscal and taxing activities, advocate the use of gold and silver coins as a medium of exchange, advocate for the abolition of the income tax as well as the radical reduction of IRS power.  (Id.)

A.  Kimberly Avenue

The first search took place at 6270 Kimberly Avenue, Suites C and D.  (Id.)  The following Plaintiffs were present at the Kimberly Avenue location at the time of the search: Charles Allen; Danielle Alires; Sherri Arendell; Allen Barclay; Shirley Boyse; Rosendo Cruz; Elvis Flores; Gustavo Gutierrez; John Kahre; Brandon Kahre; Robert Leidig; Pamela McDaniel; Heidi Rasmussen;[1] Ron Ruggles; Julia Vargas; William Whitney; and Eziquio Trevino.  (Id. at 3 n.2.)  The Kimberly Avenue location is a commercial building comprised of offices, a warehouse, and a metal shop enclosed under a common roof that is encircled by a

---

[1] The Court notes that there is no relation between this individual and Ms. Lisa A. Rasmussen, who is representing Plaintiff Robert Kahre in the instant action.

chain link fence with a gate that remains unlocked during work hours.  (Id. at 3.)
Plaintiffs allege that at 1:00 PM some of the Defendants riding in an armored
personnel carrier crashed through the closed but unlocked gate without asking
permission or first trying to open the gate.  (Id.)  As a result, Plaintiffs contend that
Defendants destroyed surveillance equipment nearby.  (Id.)

Once on the property, Plaintiffs claim that Defendants armed
themselves with submachine guns, entered the building, and trained their weapons
on the occupants.  (Id.)  Plaintiffs also allege Defendants handcuffed them,
escorted them outside, searched them, and left them in the heat for an extended
period of time at temperatures exceeding 106 degrees.  (Id.)  Defendants allegedly
ignored Plaintiffs' requests for shade and water and did not consider the age or
infirmities of some of the Plaintiffs.  (Id.)

Further, according to Plaintiffs, Defendants questioned several of
them without first advising them of their Miranda rights.  (Id.)  Defendants also
allegedly destroyed Plaintiffs' property, including office cabinets, lockboxes, and
the surveillance system unnecessarily.  (Id. 3–4.)  Plaintiffs also state Defendants
refused to present the search warrants during the search but left behind two search
warrants that did not identify the crimes investigated, a description of the property
to be searched, nor the items to be seized.  (Id. at 4.)

4

B.    <u>North Grand Canyon Drive</u>

The second search took place at 6295 North Grand Canyon Drive. (<u>Id.</u>)  At the time of the search the following Plaintiffs were present at this location: Lee Belcher; Lori Kahre; George Rodriquez; Debra Rosenbaum; and Ismael Curiel.  (<u>Id.</u> at 4 n.3.)  The primary structure on the property is a one-story building containing several administrative offices for Plaintiff Robert Kahre.  (<u>Id.</u> at 4.)  The secondary structure on the property serves as the primary residence for Plaintiffs Lori Kahre and Lee Belcher.  (<u>Id.</u>)  A five foot cinder block wall surrounds the secondary structure separating it from the primary structure.  (<u>Id.</u>)  Plaintiffs claim that the Defendants' warrant limited the search to the primary structure but Defendants searched both the primary and secondary structure.  (<u>Id.</u>)

At approximately 4:30 p.m., Defendants allegedly broke through the front door of the primary structure.  (<u>Id.</u>)  Plaintiffs claim that once inside, the Defendants broke the glass out of the sliding glass door from the inside rather than unlocking it.  (<u>Id.</u>)  Plaintiffs state that Defendants took them into custody at gunpoint and searched and handcuffed them.  (<u>Id.</u>)  Plaintiffs also assert that Defendants shot non-lethal bags at Plaintiff Lee Belcher, hitting him once in the back and twice in the stomach.  (<u>Id.</u>)  Plaintiffs claim that Lee Belcher, Lori Kahre,

and George Rodriguez all sustained injuries while Defendants took them into custody.  (Id.)

Plaintiffs once more assert that Defendants interrogated some of them without a Miranda warning.  (Id.)  The search allegedly resulted in the unnecessary destruction of the sliding glass door as well as damage to the house from an explosive device detonated by Defendants.  (Id. at 4–5.)

C.   Bledsoe Lane

The third search took place at 1555 Bledsoe Lane.  At this location is a single story house on a large lot surrounded by a wrought iron fence where the Kahres store and repair heavy equipment.  (Id. at 5.)  It is also the residence of Plaintiff Don Hamilton.  (Id.)  Plaintiffs allege that at approximately 4:10 p.m. Don Hamilton exited his house and saw Defendants outside the fence and surrounding the Bledsoe property.  (Id.)  They allegedly ordered him to raise his hands and pointed machine guns at him.  (Id.)  Plaintiffs claim that Defendants made Hamilton turn and face the wall while they cut the lock on the gate, despite Hamilton claiming to tell them they could scale the fence and retrieve the key from inside the residence.  (Id.)  Hamilton was subsequently taken into custody, searched, and handcuffed.  (Id.)

6

Plaintiffs claim Defendants did not provide a search warrant when Hamilton requested it.  (Id.)  According to Plaintiffs, Defendants told Hamilton they would put him back into handcuffs if he did not sign a document consenting to a search of the premises.  (Id.)  Plaintiffs further allege Defendants questioned Hamilton without giving him Miranda warnings.  (Id.)  Plaintiffs assert Defendants did not produce a search warrant until after they finished searching the premises and seized all the records located there.  (Id.)

Finally, Plaintiffs allege that at approximately 1:30 p.m. Defendants arrested John Kahre at Bank of the West.  (Id. at 5.)  Kahre was there to cash two checks for a total of $230,913.00.  (Id.)  Defendants confiscated Kahre's shoulder bag containing the money as well as other items.  (Id.)  Plaintiffs claim that although Kahre was shown the arrest warrant, he was unable to read it because it was only flashed at him briefly.  (Id.)  Plaintiffs also claim that Defendants did not provide Kahre with a warrant authorizing the seizure of the bag.  (Id. at 6.)  Defendant was detained at Clark County Detention Center until the following morning.  (Id.)

Plaintiffs claim that these acts deprived them of their First, Fourth, Fifth, and Fourteenth Amendment rights of the United States Constitution.  (Id.)

II.     Relevant Procedural History

On October 30, 2003, Plaintiffs filed their first complaint seeking injunctive relief against the United States and damages against unknown individual federal employees and State of Nevada employees pursuant to Bivens v. Six Unknown Fed. Narcotics Agents (Bivens), 403 U.S. 388 (1971) and 42 U.S.C. § 1983 as well as Nevada State law.  (Doc. # 1.)  On February 18, 2004, the Federal Defendants filed Motions to Dismiss per Federal Rules of Civil Procedure 12(b)(1) and (6) or, in the alternative, for Summary Judgment ("2004 Motions"). (Docs. ## 20–21.)  On October 4, 2004, United States District Judge Philip M. Pro granted in part and denied in part Defendants' 2004 Motions.  (Doc. # 56.)  Judge Pro made the following relevant findings:

> 1. Defendants are not entitled to qualified immunity for Plaintiffs' []claims for unreasonable detention alleged by Plaintiffs Cruz, Guiterrez, Ruggles, and Vargas' claims of unreasonable detention [at the Kimberly Avenue location].
> 2. Defendant Damm is not entitled to absolute immunity on Plaintiffs' claims regarding Defendant Damm's allegedly planned raids.
> 3. Defendant Crowther is not entitled to qualified immunity on Plaintiff Lori Kahre's claim of unreasonable search and seizure.
> [4.] Defendant Halper is not entitled to qualified immunity on Plaintiff Robert Kahre's claim of unlawful arrest.

8

(Id. at 24.)  Judge Pro also found that the Federal Defendants at Kimberly Avenue

were not entitled to immunity on the excessive force claims asserted by Plaintiffs

who had weapons pointed at them.  (Id. at 15–16.)

On August 12, 2004, Plaintiffs filed their first amended complaint.

(Doc. # 53.)  On April 5, 2005, a federal grand jury returned an indictment against

the majority of Plaintiffs for charges relating to tax evasion.[2]  (Cr.

2:05-cr-00121-RCJ-RJJ, Doc. # 1.)  On July 12, 2005, the Court stayed discovery

proceedings pending resolution of the criminal cases against eleven of the

Plaintiffs in the instant action.  (Doc. # 99.)  November 14, 2005, Plaintiffs filed a

second amended complaint.  (Doc. # 104.)  On August 29, 2006, the Court refused

to grant leave for Plaintiffs to file a third amended complaint.  (Doc. # 154.)  On

February 23, 2007, Plaintiff Robert Kahre commenced another lawsuit against

many of the same Defendants in the instant case, alleging numerous Racketeer

---

[2] The criminal proceeding began before United States District Judge Robert
C. Jones.  A criminal trial was conducted that resulted in the acquittal of some
defendants (i.e. some of the Plaintiffs in the instant proceedings) and a mistrial as
to others.  Kahre v. U.S. Dist. Court for Dist. of Nev., 289 Fed. Appx. 169, 170
(9th Cir. 2008).  Subsequently Plaintiff Robert Kahre sought a writ of mandamus
with the Ninth Circuit seeking, inter alia, reassignment of the case.  Id.  The Ninth
Circuit granted the writ and the criminal proceeding was reassigned to this Court.
(Cr. # 2:05-cr-00121-RCJ-RJJ, Doc. # 2002.)

9

Influenced and Corrupt Organizations (RICO) violations.[3]  (See Cv. 2:07-cv-00231-DAE-RJJ.)

In 2009, three of the remaining Plaintiffs were adjudged guilty in their criminal cases.  (See Cr. 2:05-cr-00121-RCJ-RJJ.)  Specifically, John Kahre pleaded guilty to five counts of willfully attempting to evade and defeat tax (see Cr. 2:05-cr-00121-RCJ-RJJ, Doc. ## 605, 2614); Robert Kahre was found guilty of multiple counts of conspiracy to defraud, willfully failing to collect and pay over tax, attempting to interfere with the administration of the Internal Revenue law, attempting to evade and defeat tax and wire fraud (see Cr. 2:05-cr-00121-RCJ-RJJ, Doc. ## 1671, 2615) and; Lori Kahre was found guilty of multiple counts of conspiracy to defraud, attempting to interfere with the administration of the Internal Revenue law, making a false statement to a bank and attempting to evade and defeat tax (see Cr. 2:05-cr-00121-RCJ-RJJ), Doc. ## 1671, 2623).

On September 17, 2010, in light of the length of time that had elapsed since the inception of this lawsuit, the Court issued an Order requiring each Plaintiff who still wished to proceed in this action to complete and return a copy of the "Statement of Intent to Proceed with the Instant Action" that was attached to

_____

[3] This Court ultimately dismissed the myriad claims in that suit, (Cv. 2:07-cv-00231-DAE-RJJ, Doc. # 95), and was affirmed on appeal by the Ninth Circuit (Cv. 2:07-cv-00231-DAE-RJJ, Doc. # 107).

the Order.  ("Intent Order," Doc. # 233.)  In this Order, the Court cautioned that

"[e]ach Plaintiff whose mail (order and form) is returned as undeliverable and

those Plaintiffs who do not respond (postmark date) on or before October 18, 2010,

will be dismissed with prejudice from this action."  (Id. at 2.)  Only seven out of

the twenty-four plaintiffs indicated they wanted to proceed with the litigation:

Brandon Kahre, John Kahre, Robert Kahre, Lee Belcher, Lori Kahre, Julio Vargas,

and Gustavo Gutierrez. (Docs. ## 237, 238, 248, 250, 251, 252, and 253.)  Of these

seven, however, the statements filed by John Kahre, Brandon Kahre, Vargas, and

Gutierrez were defective in that these Plaintiffs failed to check the box indicating

they agreed to follow the applicable rules and procedures of the Court and that they

agreed to be personally liable for costs and fees that might hereafter be imposed on

them.  (Docs. ## 237, 238, 252, and 253.)

> The Federal Defendants filed the instant Motion to Dismiss or, in the

Alternative, for Summary Judgment ("Motion") on November 15, 2010.  ("Mot.,"

Doc. # 254.)  In response, Plaintiff Lori Kahre requested that the Court allow her

criminal counsel, Federal Defender Michael J. Kennedy, Esq., to make a special

appearance to file a motion staying these proceedings pending resolution of her

criminal appeal on December 6, 2010.  (Doc. # 264.)  Plaintiff Robert Kahre made

the same request with respect to his criminal counsel, Lisa A. Rasmussen, Esq., the

following day.  (Doc. # 266.)  Simultaneous with these requests, Mr. Kennedy and

Ms. Rasmussen filed motions requesting a stay of the proceedings and opposed the

Federal Defendants' Motion.  (Docs. ## 265, 267.)   Pro Se Plaintiff Lee Belcher

also filed an Opposition and Request for a Stay on his own behalf.  (Doc. # 269.)

On March 11, 2011, the Court denied Plaintiffs' requests to have their

criminal counsels make limited appearances in these proceedings.  (Doc. # 278.)

Accordingly, the Court struck their motions for a stay and the oppositions.  (Id.)

On March 18, 2011, Ms. Rasmussen filed a notice of general appearance in this

litigation on behalf of Plaintiff Robert Kahre.  (Doc. # 282.)  Ms. Rasmussen, in

opposition to the Federal Defendants' Motion, filed a Motion for Stay, or for

Extension of Time to Respond to the Federal Defendants' Motion.

On March 31, 2011, the Court issued an Order denying Plaintiffs'

request for a stay but granting them an extension of time to respond to the Federal

Defendants' instant Motion ("March Order").  ("March Order," Doc. # 286.)  In

the March Order the Court also provided John Kahre, Brandon Kahre, Julio

Vargas, and Gustavo Gutierrez, the four Plaintiffs who had defectively filled out

the Statement of Intent to Proceed forms, additional time to refile the forms.  (Id. at

17.)  To date, none have done so.

On June 9, 2011, Plaintiffs Lori Kahre and Lee Belcher filed a

Response to the Federal Defendants' Motion ("Response").  ("Resp., Doc. # 293.)

On June 10, 2011, Plaintiff Robert Kahre joined in the Response.  (Doc. # 295.)

Plaintiff Robert Kahre also filed a Supplement to his earlier Motion to Stay

("Supplement").  ("Suppl.," Doc. # 294.)  On July 25, 2011, the Federal

Defendants filed a Reply.  ("Reply," Doc. # 299.)

<u>STANDARD OF REVIEW</u>

I.     <u>Motion for Summary Judgment</u>

Federal Rule of Civil Procedure ("Rule") 56 requires summary

judgment to be granted when "the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); <u>see also</u> <u>Porter v. Cal. Dep't of Corr.</u>, 419 F.3d 885, 891 (9th

Cir. 2005); <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000).  A

main purpose of summary judgment is to dispose of factually unsupported claims

and defenses.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323–24 (1986).

Summary judgment must be granted against a party that fails to

demonstrate facts to establish what will be an essential element at trial.  <u>See</u> <u>id.</u> at

323.  Before granting summary judgment, however, a non-moving party must have

a "'full and fair opportunity to ventilate the issues [related to] the . . . claims.'"

Norse v. City of Santa Cruz, --- F.3d ---, 2010 WL 5097749, at *3 (9th Cir. Dec. 15, 2010) (quoting Greene v. Solano Cnty. Jail, 513 F.3d 982, 990 (9th Cir. 2008)).

A moving party without the ultimate burden of persuasion at trial—usually, but not always, the defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).  This assertion must be supported by citations "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials," or by demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine

14

issue for trial" and may not rely on the mere allegations in the pleadings.  <u>Porter</u>,

419 F.3d at 891 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256

(1986)).  In setting forth "specific facts," the nonmoving party may not meet its

burden on a summary judgment motion by making general references to evidence

without page or line numbers.  <u>S. Cal. Gas Co. v. City of Santa Ana</u>, 336 F.3d 885,

889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary

judgment, the court shall have no independent duty to search and consider any part

of the court record not otherwise referenced in the separate concise statements of

the parties.").  "[A]t least some 'significant probative evidence'" must be

produced.  <u>T.W. Elec. Serv.</u>, 809 F.2d at 630 (quoting <u>First Nat'l Bank of Ariz. v.</u>

<u>Cities Serv. Co.</u>, 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence

that is merely colorable or not significantly probative does not present a genuine

issue of material fact."  <u>Addisu</u>, 198 F.3d at 1134.  Further, the Ninth Circuit has

"refused to find a 'genuine issue' where the only evidence presented is

'uncorroborated and self-serving' testimony."  <u>Villiarimo v. Aloha Island Air, Inc.</u>,

281 F.3d 1054, 1061 (9th Cir. 2002) (citing <u>Kennedy v. Applause, Inc.</u>, 90 F.3d

1477, 1481 (9th Cir. 1996)).  "Conclusory allegations unsupported by factual data

cannot defeat summary judgment."  <u>Rivera v. Nat'l R.R. Passenger Corp.</u>, 331 F.3d

1074, 1078 (9th Cir. 2003).  If a party fails to properly support an assertion of fact

or fails to properly address another party's assertion of fact, a court may either give the party an opportunity to support or address the fact, consider the fact undisputed for purposes of the motion and grant or deny summary judgment accordingly, or issue any other appropriate order.  Fed. R. Civ. P. 56(e).

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id.; see also Nelson v. City of Davis, 571 F.3d 924 (9th Cir. 2009) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (citations omitted).  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  T.W. Elec. Serv., 809 F.2d at 631.

II.      Motion to Dismiss

         A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of

a claim."  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  A complaint may

be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal

theory or (2) insufficient facts alleged to support a cognizable theory.  Id.  (citing

Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.1990)).  Because a

Rule 12(b)(6) motion to dismiss focuses on the sufficiency of a claim statement,

review is generally limited to the face of the complaint.  Lee v. City of Los

Angeles, 250 F .3d 668, 688 (9th Cir. 2001) (citation omitted); Clegg v. Cult

Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994) (citations omitted).  The

Court must accept all allegations of material fact as true and construe them in a

light most favorable to the nonmoving party.  Sprewell v. Golden State Warriors,

266 F.3d 979, 988 (9th Cir. 2001).  The Court, however, need not accept as true

conclusory allegations of law, unwarranted deductions of fact, and unreasonable

inferences.  Id.

         As to a plaintiff's pleading burden, the Supreme Court has held that

while a complaint "does not require 'detailed factual allegations,' . . . it demands

more than an unadorned, the defendant-unlawfully-harmed-me accusation."

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007)).  "Factual allegations must be enough to raise

a right to relief above the speculative level."  Twombly, 550 U.S. at 555. Thus, to

survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts

to state a claim to relief that is plausible on its face."  Id. at 570.  A claim is

plausible on its face "when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).  If a court

dismisses the complaint or portions thereof, it must consider whether to grant leave

to amend.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (finding that leave

to amend should be granted "if it appears at all possible that the plaintiff can

correct the defect" (quotations and citations omitted)).

## DISCUSSION

I.   Dismissal with Prejudice

            Of the twenty-four plaintiffs originally pursuing this litigation only

seven filed statements stating they wanted to proceed with the action.  They are

Brandon Kahre, John Kahre, Robert Kahre, Lee Belcher, Lori Kahre, Julio Vargas,

and Gustavo Gutierrez.  (Docs. ## 237, 238, 248, 250, 251, 252, and 253.)  The

remaining Plaintiffs were dismissed from these proceedings in the Court's March

Order because each Plaintiff has a duty and responsibility to keep the Court

apprised of their contact information if they wish to proceed or prosecute this litigation.  (March Order at 17.)

The Federal Defendants now request that the Court dismiss with prejudice John Kahre, Brandon Kahre, Julio Vargas, and Gustavo Gutierrez, the four Plaintiffs who had defectively filled out the Statement of Intent to Proceed forms.  (Reply at 4.)  The Court agrees that these plaintiffs should be dismissed from the proceedings.  In its March Order the Court declined to dismiss these four Plaintiffs notwithstanding the fact that they had submitted incomplete forms. Instead, the Court directed John Kahre, Brandon Kahre, Julio Vargas, and Gustavo Gutierrez as follows:

> John Kahre, Brandon Kahre, Julio Vargas, and Gustavo Gutierrez are hereby directed to resubmit a Statement of Intent on or before April 11, 2011.  If any of these four Plaintiffs fail to submit another Statement of Intent or fail to completely fill out the Statement of Intent indicating their willingness to abide by the rules and personally be liable for any costs awarded against them, he shall be dismissed from these proceedings with prejudice.

(March Order at 17.)  To date, none of these four Plaintiffs have submitted an amended Statement of Intent to Proceed form.  Accordingly the Court **DISMISSES** John Kahre, Brandon Kahre, Julio Vargas, and Gustavo Gutierrez with prejudice from these proceedings.  Only three Plaintiffs now remain: Robert Kahre, Lori Kahre, and Lee Belcher.

III.    Motion for Summary Judgment

As outlined, On October 4, 2004 Judge Pro granted in part and denied

in part Defendants' 2004 Motions.  Judge Pro made the following relevant

findings:

> 1. Defendants are not entitled to qualified immunity for Plaintiffs'
> []claims for unreasonable detention alleged by Plaintiffs Cruz,
> Guiterrez, Ruggles, and Vargas' claims of unreasonable detention [at
> the Kimberly Avenue location].
> 2. Defendant Damm is not entitled to absolute immunity on Plaintiffs'
> claims regarding Defendant Damm's allegedly planned raids.
> 3. Defendant Crowther is not entitled to qualified immunity on
> Plaintiff Lori Kahre's claim of unreasonable search and seizure.
> [4.] Defendant Halper is not entitled to qualified immunity on Plaintiff
> Robert Kahre's claim of unlawful arrest.

(Pro Order at 24.)  Judge Pro also found that the Federal Defendants at Kimberly

Avenue were not entitled to immunity on the excessive force claims asserted by

Plaintiffs who had weapons pointed at them.  (Id. at 15–16.)  The Federal

Defendants argue they are entitled to judgment on each of these claims.  (Mot. at

2.)

A.    Claims at Kimberly Avenue

The Federal Defendants are entitled to summary judgment with

respect to the alleged misconduct at the Kimberly Avenue location.  The three

20

remaining Plaintiffs were not present at the Kimberly Avenue location when the

alleged misconduct took place.  As Judge Pro found:

> The following Plaintiffs were present at the Kimberly location at the
> time of the raid: Charles Allen; Dannielle Alires, Sherri Arendell;
> Allen Barclay; Shirley Boyse; Rosendo Cruz; Elvis Flores; Gustavo
> Gutierrez; John Kahre; Brandon Kahre; Robert Leidic; Pamela
> McDaniel; Heidi Rasmussen; Ron Ruggles; Julio Vargas; William
> Whitney; and Eziquio Tervino

(Doc. # 56 at 3 n.2.)  Conspicuously absent from this list are the remaining

Plaintiffs, Robert Kahre, Lori Kahre, and Lee Belcher.  Indeed, the Court has

dismissed with prejudice each of the Plaintiffs Judge Pro concluded were present at

the Kimberly Ave location from these proceedings as discussed supra.

         In his Supplement, Plaintiff Robert Kahre argues there are questions

of fact surrounding the Federal Defendants' conduct at the Kimberly Avenue

location.  (Suppl. at 4.)  This is immaterial. Plaintiff Robert Kahre was not present

at the Kimberly Avenue location and thus does not have standing to seek redress

for constitutional injuries that other individuals sustained there; redress for

constitutional violations cannot be sought vicariously.  See United States v.

Pulliam, 405 F.3d 782, 786 (9th Cir. 2005); United States v. Silva, 247 F.3d 1051,

1059 (9th Cir. 2001); Mena v. City of Simi Valley, 226 F.3d 1031, 1035 n.2 (9th

Cir. 2000).  Indeed, the Court has already informed Plaintiff Robert Kahre that he may not pursue constitutional claims on behalf of others.  (Doc. # 56 at 10.)

Accordingly, the Court **GRANTS** the Federal Defendants' Motion with respect to the alleged misconduct at the Kimberly Avenue.

B.    Remaining Claims

The three remaining claims before this Court can be summarized as follows:

1.    Whether Federal Defendant Jared Halper ("Halper"), an Internal Revenue Service ("IRS") Criminal Investigation ("CI") Agent, is liable as to the claim that he arrested Plaintiff Robert Kahre at the Bank of the West based on a state court arrest warrant and was not authorized to do so ("Unlawful Arrest Issue").  (Pro Order at 20–21.)

2.    Whether Federal Defendant Dennis Crowther ("Crowther"), who is an IRS CI Agent is liable as to Plaintiff Lori Kahre's claim that he unlawfully searched her residence at the North Grand Canyon Drive location ("Unlawful Search Issue").  (Id. 19–20.)

3.     Whether Federal Defendant Damm, an Assistant United States

Attorney and one of the prosecutors who represented the

Government in <u>United States v. Robert Kahre et al.</u>, Cr. No.

CR-S-05-0121-DAE (RJJ) in which Plaintiffs Robert Kahre and

Lori Kahre were convicted of various federal tax crimes is

liable with respect to the allegation that he "planned every

phase of an unlawful raid" ("Unlawful Planning Issue").  (<u>Id.</u> at

22.)

With respect to these claims, Plaintiffs have filed a Rule 56(d)

continuance request in response to the Federal Defendants' Motion.  (Resp. at 6.)

A party requesting a continuance, denial, or other order under Rule 56(d) must

demonstrate: "(1) it has set forth in affidavit form the specific facts it hopes to

elicit from further discovery; (2) the facts sought exist; and (3) the sought-after

facts are essential to oppose summary judgment."  <u>Family Home & Fin. Ctr., Inc.</u>

<u>v. Fed. Home Loan Mortg. Corp.</u>, 525 F.3d 822, 827 (9th Cir. 2008) (citing

<u>California v. Campbell</u>, 138 F.3d 772, 779 (9th Cir. 1998)); Fed. R. Civ. P. 56(d).

"The burden is on the party seeking additional discovery to proffer sufficient facts

to show that the evidence sought exists, and that it would prevent summary judgment." Chance v. Pac-Tel Teletrac Inc., 242 F.3 1151, 1161 n.6 (9th Cir. 2001); see also Tatum v. City & Cnty. of S.F., 441 F.3d 1090, 1100 (9th Cir. 2006). The moving party must also show that it was diligent in pursuing its previous discovery opportunities. See Qualls v. Blue Cross of Cal., Inc., 22 F.3d 839, 844 (9th Cir. 1994). Failing to meet this burden "is grounds for the denial" of a Rule 56(d) motion. Pfingston v. Ronan Eng. Co., 284 F.3d 999, 1005 (9th Cir. 2002).

In the instant proceedings, discovery was stayed on July 12, 2005, pending resolution of the criminal cases against eleven of the Plaintiffs in the instant action. (Doc. # 99.) On September 7, 2010, the Court sua sponte lifted the stay in these proceedings. (Doc. # 225.) One month later, Defendants filed the instant Motion. (Doc. # 254.) Since that time Plaintiffs have appropriately filled out their intent statements and diligently sought to have counsel represent them in these proceedings as the Court suggested on September 7, 2010. (See Doc. # 225.) Plaintiffs were unable to obtain counsel until March and April of 2011: Ms. Rasmussen filed a notice of general appearance on behalf of Plaintiff Robert

Kahre on March 18, 2011 (Doc. # 282) and Mr. E. Brent Bryson filed a notice of

general appearance on behalf of Plaintiffs Lori Kahre and Lee Belcher on April 14,

2011 (Doc. # 287).  The docket reflects that no discovery has taken place since Ms.

Rasmussen and Mr. Bryson filed their notices of appearance.  Instead, Plaintiffs

filed the instant Rule 56(d) request in Response to the Federal Defendants' Motion.

 Given the procedural history in this case and the fact that Ms.

Rasmussen, in her current capacity, and Mr. Bryson are relatively new to the case,

the Court agrees that they should be afforded the opportunity to conduct at least

some discovery before the Court rules on the Federal Defendants' Motion for

Summary Judgment.   Aside from self-serving declarations and affidavits filed by

both sides, there is simply too great a paucity of evidence for the Court to

determine whether a genuine issue of material fact exists as to the three remaining

claims.

 The Federal Defendants argue they are entitled to judgment

notwithstanding the dearth of evidence on the record.  The Court disagrees.  With

respect to the Unlawful Arrest Issue, the Federal Defendants argue in their Motion

that Halper "was in a vehicle near the Bank of the West" at the time of the arrest

and only approached Plaintiff Robert Kahre after he had "already been taken into

custody by the criminal apprehension team and was in handcuffs." (Mot. at 17.)

The Federal Defendants rely on declarations filed by Halper and one other federal

agent in support of this assertion. (Mot. at 17 n.90–92.) Plaintiff Robert Kahre

disputes this fact with his own declaration alleging that Halper participated in his

arrest. (Supp. at 6.) Based on these declarations, the Court is inclined to conclude

that there is a disputed issue of material fact. The Court is cognizant, however, of

the lack of evidence on the record relating to this issue. It may well be that further

discovery will illustrate that, in fact, there is no disputed issue of material fact on

this claim. Accordingly, the Court disagrees with the Federal Defendants and finds

that a Rule 56(d) continuance is appropriate to help resolve this issue.[4]

---

[4] For the first time in Reply, the Federal Defendants argue that even if
Halper participated in the arrest it is immaterial because another government agent
with authority to arrest Robert Kahre also participated in the arrest. The Court will
not consider this argument as Plaintiffs have not had the opportunity to respond to
it. Coos Cnty. v. Kempthorne, 531 F.3d 792, 812 n.16 (9th Cir. 2008) (declining to
consider an argument raised for the first time in a reply brief); Lucas v. Bell Trans,
773 F. Supp. 2d 930, 939 n.2 (D. Nev. 2011) (noting that arguments raised for the
first time in reply will not be considered "as Plaintiffs did not have an opportunity
to respond to them"). The Federal Defendants are free to raise this argument in a
subsequent Motion for Summary Judgment if they so chose.

With respect to the Unlawful Search Issue, the Federal Defendants concede that some discovery is necessary to resolve whether an unlawful search took place at Plaintiff Lori Kahre and Plaintiff Lee Belcher's home.[5]  (Reply at 10 ("There appears to be remaining questions in the instant civil case as to whether a search of Lori Kahre's home took place at all and whether, if a search did occur, whether Ms. Kahre consented to it.").)  Accordingly a Rule 56(d) continuance is appropriate with respect to this issue as well.

On the final surviving claim, the Unlawful Planning Issue, the Court also finds that a Rule 56(d) continuance is appropriate.  Damm has filed three declarations now stating that he did not participate in planning "every phase of [the] unlawful raid."  (Mot. at 11.)  Despite Damm's declarations, there is some

---

[5] In their Motion, the Federal Defendants originally relied on Heck v. Humphry, 512 U.S. 477 (1994), to argue this claim should be dismissed.  Heck stands for the proposition that an individual who has been criminally convicted cannot recover damages under 42 U.S.C. § 1983 for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless that individual can get the conviction or sentence reversed on appeal, expunged, or declared invalid.  Id. at 486–87. In Reply, the Federal defendants have shied away from this assertion, and instead acknowledge that some discovery might be necessary to resolve this issue.  (Reply at 10.)

evidence to the contrary.[6]  The Federal Defendants dispute the validity of this

evidence, arguing it is hearsay, has never been authenticated, and is not probative

of whether Damm participated in the planning.  (Reply at 13.)  Even if these

documents, however, only remotely suggest Damm participated in the planning,

Plaintiffs are entitled to discovery to flesh out fully the extent to which Damm may

have been involved.

   In sum, the Court concludes that the Federal Defendants are entitled to

summary judgment on the Kimberly Avenue claims, but that the Plaintiffs are

entitled to a Rule 56(d) continuance for discovery purposes on the three remaining

claims as outlined above.  The Court therefore **GRANTS IN PART AND**

**DENIES IN PART WITHOUT PREJUDICE** the Federal Defendants' Motion.

The parties are hereby directed to seek a Rule 16 Scheduling Order from United

States Magistrate Judge Robert J. Johnson in order to proceed with discovery.

---

  [6] Specifically, there are some notes taken by an attorney, Stephen Pingree, based on a conversation the he allegedly had with Damm three weeks after the searches took place which suggest Damm may have been involved with the planning of the raids.  (See Doc. # 39.)  Plaintiffs also proffered some evidence obtained from the Federal Bureau of Investigation per the Freedom of Information Act which similarly suggest Damm may have been involved in the planning of some of the raids.  (See Doc. # 265.)

CONCLUSION

For the reasons stated above, the Court the Court **GRANTS IN PART AND DENIES IN PART WITHOUT PREJUDICE** Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment.  (Doc. # 254.)

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 2, 2011.

_____
DAVID ALAN EZRA
UNITED STATES DISTRICT JUDGE

Allen, et al., v. Damm, et al., Cv. Nos. S-03-1358-DAE-RJJ, S-05-0472-DAE-RJJ; ORDER: (1) GRANTING IN PART AND DENYING IN PART FEDERAL DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND (2) DISMISSING WITH PREJUDICE PLAINTIFFS JOHN KAHRE, BRANDON KAHRE, JULIO VARGAS, AND GUSTAVO GUTIERREZ