IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

CHARLES ALLEN, et al.,          )          CV. NO. 03-01358-DAE-RJJ
                                )
             Plaintiffs,        )
                                )
      vs.                       )
                                )
UNITED STATES OF AMERICA,       )
et al.,                         )
                                )
             Defendants.        )
_____ )

ORDER DENYING ROBERT KAHRE'S MOTION FOR RECONSIDERATION

Pursuant to Nevada Local Rule 78-2, the Court finds this matter suitable for disposition without a hearing.  After reviewing the Motion for Reconsideration filed by Plaintiff Robert Kahre ("Kahre"), and the supporting and opposing memoranda, the Court **DENIES** Plaintiff's Motion (doc. # 325).

BACKGROUND

I.      Factual Allegations

Plaintiffs are a group of individuals boycotting the Federal Reserve System by using gold and silver coins manufactured by the United States Mint as a medium of exchange and "thereby avoiding income taxes imposed due to the

exchange rate between gold and silver dollars and Federal Reserve Notes denominated as if they were dollars."  ("Pro Order," Doc. # 56 at 2.)  Plaintiffs have filed suit against a variety of defendants for alleged constitutional violations. Plaintiffs originally named as defendants the United States of America, two of its executive subdivisions—the United States Department of Justice ("DOJ") and the Internal Revenue Service ("IRS")—as well as several individuals who work for the federal government.  (Id.)  The Complaint also originally named high ranking officials in the DOJ and IRS, federal strike force/SWAT team members, and North Las Vegas Police Department officers as defendants.  (Id.)

After several years of litigation, many of Plaintiffs' claims have been disposed of.  One of the remaining claims is based on the allegedly unlawful arrest of Kahre on May 29, 2003 at the Bank of the West ("Bank") in Henderson, Nevada.  (See "SAC," Doc. # 104 ¶ 456.)  Plaintiffs allege that IRS Agent Jared Halper ("Halper") arrested him pursuant to a state bench warrant even though Halper was unauthorized to do so as an IRS agent.  According to Plaintiffs, Kahre went to the Bank on that day for a prearranged meeting with a customer service manager to exchange two checks amounting to $230,913.00 for Federal Reserve Notes.  (See SAC ¶ 455.)  Plaintiffs allege that when Kahre completed his transaction, he was approached by a group of law enforcement officers claiming to

be FBI and IRS agents.  (Id. ¶ 456.)  One of them allegedly told Kahre "I am IRS Special Agent Jared Halper."  (Id.)  The group of agents proceeded to remove Kahre's shoulder bag, place him in handcuffs, and inform him of a Nevada state bench warrant for his arrest.  (Id. ¶¶ 456–459.)  Plaintiffs allege that two purported FBI agents then put Kahre in a police car and drove him to a Walmart parking lot, where the FBI agents turned Kahre over to a Las Vegas Metropolitan Police Department officer.  (Id. ¶¶ 467–468.)  Kahre was arrested pursuant to a bench warrant obtained from Judge Mark Denton of the District Court for Clark County, Nevada.  ("First Halper Decl.," Doc. # 22 ¶ 22.)

II.    Procedural History

        On October 30, 2003, Plaintiffs filed their first complaint seeking injunctive relief against the United States and damages against unknown individual federal employees and State of Nevada employees pursuant to Bivens v. Six Unknown Fed. Narcotics Agents ("Bivens"), 403 U.S. 388 (1971) and 42 U.S.C. § 1983 as well as Nevada state law.  (Doc. # 1.)  On February 18, 2004, the Federal Defendants filed Motions to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) or, in the alternative, for Summary Judgment ("2004 Motions").  (Docs. ## 20–21.)  On October 4, 2004, United States District Judge Philip M. Pro granted in part and denied in part Defendants' 2004 Motions.  (Pro Order.)  In his

Order, Judge Pro found that Halper was not entitled to qualified immunity on Kahre's unlawful arrest claim because he "exceeded his authority in arresting Kahre pursuant to a state bench warrant unrelated to internal revenue laws."  (Id. at 20.)  In reaching this conclusion, Judge Pro noted that while FBI agents would be authorized to execute the arrest warrant for Kahre, IRS agents are not so authorized.  (Id.)

On August 12, 2004, Plaintiffs filed their First Amended Complaint. (Doc. # 53.)  On April 5, 2005, a federal grand jury returned an indictment against the majority of the Plaintiffs for charges relating to tax evasion.  (Cr. 2:05–cr–00121–RCJ–RJJ, Doc. # 1.)  On July 12, 2005, the Court stayed discovery proceedings pending resolution of the criminal cases against eleven of the Plaintiffs in the instant action.  (Doc. # 99.)  On November 14, 2005, Plaintiffs filed a Second Amended Complaint ("SAC").  (Doc. # 104.)  On August 29, 2006, the Court refused to grant leave for Plaintiffs to file a third amended complaint. (Doc. # 154.)  On February 23, 2007, Plaintiff Robert Kahre commenced another lawsuit against many of the same Defendants in the instant case, alleging numerous

Racketeer Influenced and Corrupt Organizations (RICO) violations.[1]  (See Cv.

2:07–cv–00231–DAE–RJJ.)

In 2009, three of the remaining Plaintiffs were adjudged guilty in their

criminal cases.  (See Cr. 2:05–cr–00121–RCJ–RJJ.)  Specifically, John Kahre

pleaded guilty to five counts of willfully attempting to evade and defeat tax (see

Cr. 2:05–cr–00121–RCJ–RJJ, Docs. ## 605, 2614); Robert Kahre was found guilty

of multiple counts of conspiracy to defraud, willfully failing to collect and pay

over tax, attempting to interfere with the administration of the Internal Revenue

law, attempting to evade and defeat tax, and wire fraud (see Cr.

2:05–cr–00121–RCJ–RJJ, Docs. ## 1671, 2615); and Lori Kahre was found guilty

of multiple counts of conspiracy to defraud, attempting to interfere with the

administration of the Internal Revenue law, making a false statement to a bank and

attempting to evade and defeat tax (see Cr. 2:05–cr–00121–RCJ–RJJ, Docs.

## 1671, 2623).

The Court sua sponte lifted the stay in these proceedings on

September 7, 2010.  (Doc. # 225.)  On November 15, 2010, the Federal Defendants

filed a Motion to Dismiss or, in the Alternative, for Summary Judgment.  (Doc.

---

[1] This Court ultimately dismissed the myriad claims in that suit,
(Cv.2:07–cv–00231–DAE–RJJ, Doc. # 95), and was affirmed on appeal by the
Ninth Circuit (Cv. 2:07–cv–00231–DAE RJJ, Doc. # 107).

# 254.)  In their July 25, 2011 reply brief, the Federal Defendants argued that they were entitled to summary judgment because regardless of whether Halper participated in the arrest, it is undisputed that at least one FBI agent with the authority to arrest Kahre also participated in the arrest.  (Doc. # 299.)  In its September 2, 2011 Order, the Court declined to address this issue because it was raised for the first time in a reply brief but noted that the Federal Defendants were free to raise the argument in a subsequent Motion for Summary Judgment.  (Doc. # 300 at 26 n.4.)

Pursuant to the Court's Order, the Federal Defendants filed a Motion for Partial Summary Judgment as to Kahre's wrongful arrest claim on September 29, 2011.  ("MSJ," Doc. # 301.)  On October 17, 2011, Plaintiff Kahre filed a Memorandum in Opposition to the Motion.  ("Opp. to MSJ," Doc. # 303.)  On October 27, 2011, the Federal Defendants filed a Reply in further support of their Motion.  (Doc. # 307.)  On October 31, 2011, Plaintiffs Lori Kahre and Lee Belcher filed a Joinder in the Opposition.  (Doc. # 308.)  On April 24, 2012, after a hearing on the Motion,[2] the Court issued an Order Granting Defendants' Motion for Partial Summary Judgment.  ("Order," Doc. # 319.)

---

[2] No counsel appeared at the hearing on behalf of Plaintiff Kahre.

On May 25, 2012, Plaintiff Kahre filed a Motion for Reconsideration of this Court's April 24, 2012 Order.  ("Mot. for Recon.," Doc. # 325.)  On May 30, 2012, the Federal Defendants filed a Memorandum in Opposition to the Motion for Reconsideration.  ("Opp. to Recon.," Doc. # 326.)  On June 5, 2012, Plaintiff Kahre filed a Reply in further support of his motion.  ("Reply," Doc. # 330.)

<u>STANDARDS OF REVIEW</u>

The disposition of a motion for reconsideration is within the discretion of the district court.  <u>Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation</u>, 331 F.3d 1041, 1046 (9th Cir. 2003); <u>Plotkin v. Pac. Tel. & Tel. Co.</u>, 688 F.2d 1291, 1292 (9th Cir. 1982).  This rule derives from the compelling interest in the finality of judgments, which should not be lightly disregarded.  <u>Rodgers v. Watt</u>, 722 F.2d 456, 459 (9th Cir. 1983).

Motions for reconsideration are brought pursuant to Federal Rules of Civil Procedure 59(e) or 60(b).  A motion for reconsideration under Rule 59(e) should not be granted, absent highly unusual circumstances, unless the district court is (1) presented with newly discovered evidence, (2) committed clear error, or (3) if there is an intervening change in the controlling law.  <u>389 Orange Street Partners v. Arnold</u>, 179 F.3d 656, 665 (9th Cir. 1999) (citation omitted).  Mere disagreement with a previous order is an insufficient basis for reconsideration.

Haw. Stevedores, Inc. v. HT & T Co., 363 F. Supp. 2d 1253, 1269 (D. Haw. 2005).

In addition, a Rule 59(e) motion for reconsideration "may not be used to raise

arguments or present evidence for the first time when they could reasonably have

been raised earlier in the litigation."  Kona Enters., Inc. v. Estate of Bishop, 229

F.3d 877, 890 (9th Cir. 2000) (citation omitted).

      Under Federal Rule of Civil Procedure 60(b), a court may grant

reconsideration on the grounds of "mistake, inadvertence, surprise, or excusable

neglect," fraud, or newly discovered evidence.  Fed. R. Civ. P. 60(b).  A court may

correct its own error of law under Rule 60(b).  Kingvision Pay-Per-View Ltd. v.

Lake Alice Bar, 168 F.3d 347, 350 (9th Cir. 1999); Liberty Mut. Ins. Co. v. EEOC,

692 F.2d 438, 441 (9th Cir. 1982) ("The law in this circuit is that errors of law are

cognizable under Rule 60(b).").

## DISCUSSION

      Plaintiff seeks reconsideration of this Court's April 24, 2012 Order

Granting Defendants' Motion for Partial Summary Judgment under Rule 59(e) and

Rule 60.  The Court notes that Plaintiff's Motion for Reconsideration was filed

more than 28 days after judgment was entered, and is therefore untimely under

Rule 59(e).[3]  Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.").  The Court will treat the motion as one brought under Rule 60(b) for relief from a judgment or order.

Kahre's unlawful arrest claim was initially premised upon the argument that the agents who arrested him had neither probable cause nor a warrant authorizing his arrest.  (SAC ¶ 510(B).)  Kahre later took the position that his arrest was unlawful because it was effected by Halper, who as an IRS agent lacked the authority to execute a state warrant.  (Doc. # 34 at 32.)  In their Motion for Partial Summary Judgment, Defendants argued that they are entitled to summary judgment as to Kahre's wrongful arrest claim because the facts establish that at least one FBI agent participated in Kahre's arrest.  (MSJ at 2.)  According to Defendants, it is immaterial whether Agent Halper participated in Kahre's May 29, 2003 arrest because the participation of at least one FBI agent makes the arrest valid as a matter of law.  (Id. at 4.)  Plaintiff contends that an FBI agent's participation in his arrest would not render the arrest lawful (Opp. to MSJ at

---

[3] The Order was filed on April 24, 2012, so a Rule 59(e) motion would have been timely if filed by May 22, 2012.  Plaintiff's Motion for Reconsideration was filed on May 25, 2012.

19–21), and in any event Defendants have not established that FBI agents were present (id. at 11–12).

Under Nevada law, FBI agents are authorized to execute state arrest warrants "for public offenses." See Nev. Rev. Stat. § 171.1245(5). Although Nevada does not define the term "public offenses," Black's Law Dictionary defines "public offense" as "an act or omission forbidden by law." Black's Law Dictionary 1188 (9th ed. 2009). In this case, Judge Denton issued a bench warrant for Plaintiff's arrest as a result of his failure to appear on December 9, 2002 as directed in an Order to Show Cause issued by the District Court for Clark County, Nevada. Failure to appear is an act forbidden by law, i.e., a public offense. Accordingly, FBI agents were authorized to execute the state arrest warrant for Plaintiff. Thus, the question the Court confronted in its April 24, 2012 Order was whether Halper's alleged participation in Plaintiff's arrest rendered an otherwise valid arrest unlawful.

In its April 24, 2012 Order, the Court described the applicable law as follows:

> In evaluating whether it is proper for officers to bring a third party to the execution of an arrest warrant, the U.S. Supreme Court has considered whether the third party's purpose is to help further the execution of the warrant. See, e.g., Wilson v. Layne, 526 U.S. 603, 611–12 (1999) (noting that courts have long approved of the presence of a third party to help police identify stolen property, but holding that

"it is a violation of the Fourth Amendment for police to bring members of the media or other third parties into a home during the execution of a warrant when the presence of the third parties in the home was not in aid of the execution of the warrant"). Courts have also considered whether a third party is supervised or accompanied by an officer who is authorized to carry out the warrant. See, e.g., Santoni v. Potter, 369 F.3d 594, 601 (1st Cir. 2004) (finding that a postal inspector lawfully participated in an arrest, despite lacking authority under state law to execute state arrest warrants, because the arrest was carried out under the lawful authority of a sheriff). In Santoni, the court noted that "it would be elevating form over substance to conclude that the validity of the arrest depended on which of the two men uttered the words 'You are under arrest,' or placed the Plaintiff in handcuffs." 369 F.3d at 600–01.

(Order at 12–13.)

The Court found that the undisputed facts established that FBI agents participated in Kahre's arrest. (Id. at 15.) It further found that Halper's purpose in being present at Kahre's arrest was to help execute the warrant. (Id.) Thus, the Court concluded that Halper's presence did not invalidate an otherwise lawful arrest,[4] and Halper was not liable as to Plaintiff's wrongful arrest claim. (Id. at 15–16.)

---

[4] In his Motion for Reconsideration, Plaintiff mischaracterizes the Court's holding. He claims that the Court took the position that the unlawfulness of Plaintiff's arrest by Halper was purged by the presence of FBI agents. (Mot. for Recon. at 9.) On the contrary, the Court found that the lawfulness of Plaintiff's arrest by FBI agents was not rendered unlawful by the participation of Halper, a third party. (Order at 15–16.)

11

In the instant Motion, Plaintiff argues that the Court erred in granting summary judgment because the record reflects a genuine issue of material fact as to the presence of FBI agents at his arrest.  Plaintiff also asserts that the Court erred as a matter of law in finding that the participation of an FBI agent rendered his arrest lawful.  Finally, Plaintiff maintains that the Court's refusal to grant his request for more time to conduct discovery was clearly erroneous.

I.     Genuine Issue of Material Fact

Summary judgment is properly granted under Federal Rule of Civil Procedure 56 when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  The party moving for summary judgment must identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

Once the moving party has carried its burden of production, the nonmoving party "must set forth specific facts showing that there is a genuine

issue for trial." Porter, 419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  The Ninth Circuit has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (citing Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996)). "Conclusory allegations unsupported by factual data cannot defeat summary judgment." Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1078 (9th Cir. 2003).  When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party.  Porter, 419 F.3d at 891.

        In its April 24, 2012 Order, the Court concluded that summary judgment in Defendants' favor was appropriate, finding that "[t]he undisputed facts establish that at least one FBI agent participated in Kahre's arrest."  (Order at 13.) The Court based this finding upon a declaration submitted by former FBI Special Agent Richard L. Beasley ("Beasley") in which Beasley stated that he participated in the arrest of Robert Kahre at the Bank on May 29, 2003, including helping to

handcuff Kahre.  ("Beasley Decl.," Doc. # 301-3.)  Beasley stated that FBI Special

Agent Larry Wenko was present at the arrest as well.  (Beasley Decl. ¶ 3.)  The

Court also based its conclusion on statements made by Plaintiff himself in the

SAC, in a declaration filed with the Court, and in other related proceedings.

(Order at 13–14.)  Based on these statements, the Court concluded that Plaintiff

had "repeatedly admitted that FBI agents participated in his arrest."  (Order at 13.)

          Kahre argues that the Court was incorrect to base its ruling on the

"undisputed" presence of an FBI agent at Kahre's arrest when "[i]n fact, the

presence of an FBI agent was squarely disputed."  (Mot. for Recon. at 6.)  As a

preliminary matter, the Court notes that to the extent Plaintiff appears to believe

that the very fact that he disputes whether an FBI agent was present suffices to

defeat Defendants' Motion for Summary Judgment, he is mistaken.  It is not

enough for Plaintiff to dispute the presence of an FBI agent; conclusory allegations

and self-serving testimony do not demonstrate the existence of a genuine issue of

material fact.

          However, Plaintiff's objection to the Court's finding that he

"repeatedly admitted that FBI agents participated in his arrest" (Order at 13) has

merit.  The Court relied upon the following when it reached that conclusion:

Plaintiff's statement in the SAC and in his RICO complaint that he was handcuffed

by "five men who claimed they were FBI and IRS agents" (SAC ¶ 456; Cv. No. 07-00231 DAE-RJJ, Doc. # 1 ¶ 441); Plaintiff's statement in a declaration filed with the Court that one of the agents who approached him at the Bank "identified himself as FBI but did not state his name" ("Kahre Decl.," Doc. # 39 at 6); and Plaintiff's reference to "the events surrounding his illegal arrest by Halper and other IRS and FBI officers on May 29, 2003" in another proceeding (Cr. No. 05-00121 DAE-RJJ, Doc. # 2117 ¶ 5). The first two statements acknowledge only that persons <u>claiming</u> to be FBI agents participated in Plaintiff's arrest. The third is followed by direct quotes culled from Plaintiff's complaint, which indicate only that individuals claiming to be FBI agents were present at his arrest. Thus, Plaintiff has consistently maintained not that FBI agents were involved in his arrest, but that persons who identified themselves as FBI agents were involved in his arrest. The distinction is subtle, but the Court concludes that Plaintiff's former statements do not demonstrate the "undisputed" presence of FBI agents at Plaintiff's arrest.

The Court did not, however, rely on Plaintiff's former statements alone. The Court also considered the declaration of Agent Beasley when it concluded that Defendants had established that there was no genuine issue as to any material fact. Agent Beasley declared under penalty of perjury that, in the exercise

of his official duties as an FBI Special Agent, he participated in Kahre's arrest on May 29, 2003, including helping to handcuff Kahre.  (Beasley Decl. ¶ 3.)  Beasley also declared that FBI Special Agent Larry Wenko was present at Kahre's arrest.  (Id.)  Plaintiff objects to the Court's reliance on the Beasley declaration for two reasons.

First, Plaintiff asserts that Agent Beasley's declaration was inadmissible for purposes of Defendants' Motion for Summary Judgment.  (Mot. for Recon. at 8.)  This argument is without merit.  Federal Rule of Civil Procedure 56 provides that a declaration used to support or oppose a motion for summary judgment must be based on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.  Fed. R. Civ. P. 56(c)(4); Block v. City of L.A., 253 F.3d 410, 419 (9th Cir. 2001).  Beasley's declaration appears adequate under Rule 56 and is plainly based upon personal knowledge, Plaintiff's allegations to the contrary notwithstanding.  "Unfounded speculation as to [a declarant's] alleged lack of personal knowledge of the events in his [declaration] does not render it inadmissible."  Nevada Dept. of Corrections v. Greene, 648 F.3d 1014, 1019 (9th Cir. 2011).

Second, Kahre questions the veracity of Beasley's statements. According to Plaintiff, "Mr. Beasley could be lying, and discovery is needed to determine the precise contours of his alleged presence at the arrest."  (Mot. for Recon. at 7–8.)  General and unsupported attacks on the credibility of Defendant's evidence do not establish the existence of a triable issue of fact.  See Crawford-El v. Britton, 523 U.S. 574, 600 (1998) ("[I]f the [defendant] has made a properly supported motion, the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden. . . ."); Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 997 (9th Cir. 2001) ("A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment.  Instead, the non-moving party must . . . by its own evidence set forth specific facts showing that there is a genuine issue for trial.") (internal quotation marks and citation omitted).  Plaintiff does not supply any affirmative evidence that controverts Agent Beasley's sworn declaration,[5] and

---

[5]  Kahre points to the Declaration of Arrest sworn out by Las Vegas Metropolitan Police Department Officer Aiken ("Aiken") on May 29, 2003 and statements made by the Nevada Employment Security Division as direct evidence contradicting the evidence produced by Defendants.  (Mot. for Recon. at 9–10.)  In the Declaration of Arrest, Aiken stated that he was assisting IRS agents when he came into contact with Robert Kahre and took him into custody on May 29, 2003.  (Doc. # 39 at 28.)  Similarly, in a Motion to Obtain Access to Seized Property, the

Plaintiff's own description of his arrest is consistent with Agent Beasley's account. Kahre has, after all, consistently maintained that individuals identifying themselves as FBI agents participated in his arrest, and has even acknowledged that someone other than Halper handcuffed him. (Doc. # 34 at 32 ("That Halper did not physically place the cuffs on Kahre is beside the point.").) Plaintiff's baseless claim that Beasley is lying fails to convince the Court of the existence of any genuine issue of triable fact.

Plaintiff also argues that the Court erred in concluding that the presence of an FBI agent was dispositive. Plaintiff maintains that even if FBI agents were present at and participated in his arrest, his arrest was still unlawful. This argument is based on Kahre's reading of Santoni v. Potter, 369 F.3d 594 (1st Cir. 2004), a case cited to by Defendants in their Motion for Summary Judgment and by the Court in its April 24, 2012 Order. According to Kahre, Santoni stands for the proposition that, when a third party helps to effect an arrest pursuant to an

_____

Nevada Employment Security Division stated that IRS agents arrested Kahre. (Doc. # 39 at 36.) The Court noted in its April 24, 2012 Order that these statements merely indicate that IRS agents were involved in Kahre's arrest; they in no way suggest that IRS agents were the only federal agents and officers involved. (Order at 14 n.4.) Plaintiff himself acknowledges that "these facts are not dispositive on the question of whether FBI agents were actually present." (Mot. for Recon. at 10.) Construed in the light most favorable to Plaintiff, the statements fail to raise a triable issue as to whether any FBI agents participated in Kahre's arrest.

arrest warrant, the arrest is lawful only if the third party is accompanied by an individual who is aware of the existence of the warrant and not only authorized but <u>required</u> to execute it.  Thus, Plaintiff maintains that "[i]f Mr. Beasley or any other FBI agent was not aware of the arrest warrant, did not see the arrest warrant before the arrest, was not legally obligated to execute it (as opposed to being merely 'authorized' to do so), and / or became aware of it after the arrest, <u>Santoni</u> does not purge the unlawful arrest."  (Mot. for Recon. at 9.)

This argument reflects a misunderstanding of the holding in <u>Santoni</u>. In <u>Santoni</u>, a federal postal inspector, accompanied by a state deputy sheriff, arrested the plaintiff for indecent conduct pursuant to a state arrest warrant.  369 F.3d at 597.  The First Circuit concluded that the arrest was lawful despite the participation of the federal postal inspector, who was not authorized to execute a state arrest warrant, because it was carried out under the lawful authority of the sheriff.  <u>Id.</u> at 600–01.  The court pointed out that the sheriff was not only authorized under state law to arrest the plaintiff, he was required to execute all outstanding arrest warrants of which he was aware.  <u>Id.</u> at 601.  The court's conclusion that the arrest was lawful did not, however, depend upon a finding that the sheriff had a duty to execute the state arrest warrant.  It was based upon the fact that the sheriff was authorized to arrest the plaintiff.  <u>See id.</u> at 601–02 ("[The

sheriff] had valid authority to execute that warrant.  Therefore, we agree with the

district court that Santoni's arrest was lawful under Maine law and that it did not

constitute an unreasonable seizure under the Fourth Amendment.").  As for the

proposition that an arrest based upon a warrant is lawful only if the arresting

officer is aware of the warrant at the time of the arrest, the court in Santoni

expressly declined to rule on that issue because the plaintiff failed to argue it in the

lower court.  Id. at 601.  Santoni does not, therefore, support Kahre's argument that

his arrest was lawful only if the FBI agents who participated were aware of the

state warrant's existence and legally obligated to execute it.

The Court concludes that the participation of an FBI agent in Kahre's

arrest is, in fact, dispositive.  Furthermore, it again finds that Defendants have

carried their burden under Rule 56, and Plaintiff has failed to set forth any facts or

produce any evidence that tends to establish the existence of a triable issue of fact.

## II.   Opportunity to Conduct Discovery

Kahre claims that the Court's grant of summary judgment was

premature because he has not had an opportunity to conduct discovery.  He argues

that the "the Court's Order should be withdrawn and further discovery permitted

. . . in light of the fact that to date, [he] has been wholly denied the ability to carry

out any adversary testing of the government's witnesses by way of discovery."

20

(Reply at 2.)  According to Plaintiff, he needs discovery to "flesh out" whether an

FBI agent was actually present at his arrest (Mot. for Recon. at 7) or, alternatively,

to determine "whether Beasley and any other FBI agents present–assuming

Beasley is telling the truth–were even aware of the warrant at the time of the

arrest" (id. at 9).

   The Court is aware that Kahre has not had an opportunity to conduct

discovery in this case.  The case was stayed on July 12, 2005 pending resolution of

the related criminal proceedings.  (Doc. # 99.)  After the stay was lifted on

September 7, 2010 (doc. # 225), Plaintiff was unable to obtain counsel until March

2011 (doc. # 282), and since then has been occupied opposing a series of motions

for summary judgment filed by Defendants (docs. ## 254, 301).  In its September

2, 2011 Order Granting in Part and Denying in Part Federal Defendants' Motion

for Summary Judgment, this Court concluded that Plaintiff should be afforded the

opportunity to conduct some discovery before the Court granted summary

judgment.  (Doc. # 300.)  The Court noted that there was simply too great a paucity

of evidence to determine whether a genuine issue of material fact existed as to the

remaining claims.  (Id. at 25.)

   After the issuance of the September 2, 2011 Order, Defendants filed

another Motion for Partial Summary Judgment (doc. # 301), the granting of which

is the subject of the instant Motion for Reconsideration.  Unlike Defendants' first

Motion for Summary Judgment (doc. # 254), which was supported only with "self-

serving declarations and affidavits" (doc. # 300 at 25), the Motion for Partial

Summary Judgment (doc. # 301) was supported by Agent Beasley's declaration.

In Plaintiff's Opposition to Defendants' Motion for Partial Summary Judgment, he

requested additional time to conduct discovery pursuant to Federal Rule of Civil

Procedure 56(d).  (Opp. to MSJ at 13–14.)

Under Rule 56(d), if a party opposing summary judgment

demonstrates to the Court that it cannot present facts essential to justify its

opposition, the Court may defer consideration of the motion; deny the motion;

allow additional time to conduct discovery; or issue any other appropriate order.

Fed. R. Civ. P. 56(d).  A party requesting a continuance, denial, or other order

under Rule 56(d) must demonstrate: "(1) it has set forth in affidavit form the

specific facts it hopes to elicit from further discovery; (2) the facts sought exist;

and (3) the sought-after facts are essential to oppose summary judgment."  Family

Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp., 525 F.3d 822, 827 (9th

Cir. 2008) (citing California v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998)).

"The burden is on the party seeking additional discovery to proffer sufficient facts

to show that the evidence sought exists, and that it would prevent summary

22

judgment."  <u>Chance v. Pac-Tel Teletrac Inc.</u>, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001).

The Court concludes, as it did in its April 24, 2012 Order, that Plaintiff has failed to satisfy the requirements of Rule 56(d).  Plaintiff has failed to set forth (in affidavit or any other form) specific facts he hopes to elicit from further discovery.  His Opposition to Defendants' Motion for Summary Judgment stated only that he is "of the belief that deposition testimony, as well as a thorough review of policies and procedures of the governmental entities involved in the complained of conduct, as well as expert reports, and clearly established case law, will establish that [his] constitutional rights were violated by the federal defendants."  (Opp. to MSJ at 13.)  In the instant Motion for Reconsideration, Plaintiff is equally vague, claiming, for example, that he must "flesh out" the evidence.  (Mot. for Recon. at 7.)  The only specific fact Plaintiff states that he hopes to elicit is whether the FBI agents present at his arrest were aware of the state arrest warrant.  (<u>Id.</u> at 9.)  However, as the Court noted above, the FBI agents' awareness of the existence of the state arrest warrant is not relevant to Plaintiff's claim.

Plaintiff has also failed to convince the Court that <u>any</u> facts exist that would prevent summary judgment as to his unlawful arrest claim.  The only evidence that would suffice is evidence that Agent Beasley is lying about having

participated in Kahre's arrest along with Agent Wenko.  This Court will not

countenance a fishing expedition.  See Painsolvers, Inc. v. State Farm Mut. Auto.

Ins. Co., 732 F. Supp. 2d 1107, 1125 (D. Haw. 2010) ("Rule [56(d)] is not a license

for a fishing expedition in the hopes that [a party] might find facts to support its

claims.").  There is absolutely no indication that Agent Beasley's declaration is

false.  In fact, as the Court previously noted, Agent Beasley's account of Kahre's

arrest is entirely consistent with Kahre's own version of events.  The Court will not

reverse its Order granting summary judgment so that Kahre can attempt to prove

his baseless claim that Agent Beasley committed perjury.

The Court recognizes that when "a summary judgment motion is filed

. . . early in the litigation, before a party has had any realistic opportunity to pursue

discovery relating to its theory of the case, district courts should grant any [Rule

56(d)] motion fairly freely."  Burlington N. Santa Fe Ry. Co. v. Assiniboine &

Sioux Tribes of the Fort Peck Reservation, 323 F.3d 767, 773 (9th Cir. 2003).  In

fact, "[a]lthough [Rule 56(d)] facially gives judges the discretion to disallow

discovery when the non-moving party cannot yet submit evidence supporting its

opposition, the Supreme Court has restated the rule as requiring, rather than merely

permitting, discovery 'where the nonmoving party has not had the opportunity to

discover information that is essential to its opposition.'"  Metabolife Intern., Inc. v.

24

Wornick, 264 F.3d 832, 846 (9th Cir. 2001) (quoting Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 250 n.5 (1986)).  However, in a case such as this one, where no

amount of discovery would preclude summary judgment, the Court need not

authorize a futile search.  See, e.g., Michelman v. Lincoln Nat'l Life Ins. Co., 685

F.3d 887, 892 (9th Cir. 2012) ("A district court abuses its discretion only if the

party requesting a continuance [to conduct discovery] can show that allowing

additional discovery would have precluded summary judgment.").

   Plaintiff also contends that he did not have an opportunity to

"ventilate" the issues prior to the Court's grant of summary judgment on his claim.

(Opp. to MSJ at 12 (quoting Norse v. City of Santa Cruz, 629 F.3d 966, 973–73

(9th Cir. 2010)).)  In support of this argument, Plaintiff points to Ninth Circuit

cases that guarantee a non-moving party a "full and fair opportunity to ventilate the

issues" prior to a grant of summary judgment to the moving party.  Greene v.

Solano Cnty. Jail, 513 F.3d 982, 990 (9th Cir. 2008) (quoting Cool Fuel, Inc. v.

Connett, 685 F.2d 309, 312 (9th Cir. 1982)).  These cases are inapposite; they do

not apply to parties in Plaintiff's position.  Rather, they stand for the proposition

that a district court may not sua sponte grant summary judgment on a claim

without first giving the losing party notice and an opportunity to present evidence,

unless the losing party has already had a "full and fair opportunity to ventilate the

issues involved in the motion." United States v. Grayson, 879 F.2d 620, 625 (9th

Cir. 1989) (quoting Waterbury v. T.G.&Y. Stores Co., 820 F.2d 1479, 1480 (9th

Cir. 1987)).

<u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for

Reconsideration.  (Doc. # 325.)

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 13, 2012.

_____
David Alan Ezra
United States District Judge

Charles Allen, et al. v. United States of America, et al., Cv. No. 03-01358 DAE-
RJJ; ORDER DENYING ROBERT KAHRE'S MOTION FOR
RECONSIDERATION