IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| CHARLES ALLEN, et al., | ) | CV. NO. 03-01358-DAE-RJJ |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER: (1) DENYING PLAINTIFF'S REQUEST FOR ADDITIONAL
DISCOVERY; AND (2) GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

On May 16, 2014, the Court heard argument on a Motion for Summary

Judgment Regarding the Remaining Claim of Plaintiff Robert Kahre filed by

Defendants Assistant United States Attorney Gregory Damm ("Damm") and IRS

Criminal Investigation Division Agent Jared Halper ("Halper") (collectively,

"Defendants"). ("Mot.," Dkt. # 409.) Lisa A. Rasmussen, Esq., appeared at the

hearing on behalf of Plaintiff Robert Kahre; and Charles M. Duffy, Esq., appeared at

the hearing on behalf of the Defendants Damm and Halper. After a careful review

of the Motion and the supporting and opposing memoranda, the Court **DENIES**

Plaintiff's Request for Additional Discovery and **GRANTS** the Motion for

Summary Judgment.

BACKGROUND

This case concerns a group of individuals, including former Plaintiffs and current Plaintiff Robert Kahre, who describe themselves as a group of individuals boycotting the Federal Reserve System by using gold and silver coins manufactured by the United States mint as a medium of exchange, "thereby avoiding income taxes based on the exchange rate between gold and silver dollars and Federal Reserve Notes denominated as if they were dollars."  ("SAC," Dkt. # 104 at 3.)

Robert Kahre operated several businesses throughout Las Vegas, Nevada, including a building contractor business, a sheet metal fabricating business, and a contract labor leasing company.  For Kahre's contract labor leasing company, Kahre would enter into agreements with individuals to provide labor and services for various businesses throughout Clark County.  These agreements stated that compensation for services and labor shall be paid in post-1985 U.S. minted gold and silver coins at face value.  Kahre failed to withhold federal income taxes because he asserted that the individuals themselves were responsible for paying federal income and social security taxes.  Also, Kahre did not file business tax returns or employment taxes.

Because of Kahre's failure to withhold and pay taxes pursuant to the

2

internal revenue laws, the Government began a criminal investigation of Kahre.  On May 29, 2003, search warrants were executed at three separate locations: Kimberly Drive, North Grand Canyon Drive, and Bledsoe Lane.

A.   <u>Kimberly Avenue</u>

The first search took place at 6270 Kimberly Avenue, Suites C and D. (Dkt. # 56 at 2.)  The following Plaintiffs were present at the Kimberly Avenue location at the time of the search: Charles Allen; Danielle Alires; Sherri Arendell; Allen Barclay; Shirley Boyse; Rosendo Cruz; Elvis Flores; Gustavo Gutierrez; John Kahre; Brandon Kahre; Robert Leidig; Pamela McDaniel; Heidi Rasmussen; Ron Ruggles; Julia Vargas; William Whitney; and Eziquio Trevino.  (<u>Id.</u> at 3 n.2.)  The Kimberly Avenue location is a commercial building comprised of offices, a warehouse, and a metal shop enclosed under a common roof that is encircled by a chain link fence with a gate that remains unlocked during work hours.  (<u>Id.</u> at 3.) Plaintiffs allege that at 1:00 p.m. some of Defendants riding in an armored personnel carrier crashed through the closed but unlocked gate without asking permission or first trying to open the gate.  (<u>Id.</u>)  As a result, Plaintiffs contend that Defendants destroyed surveillance equipment nearby.  (<u>Id.</u>)

Once on the property, Plaintiffs claim that Defendants armed themselves with submachine guns, entered the building, and trained their weapons on the occupants.  (<u>Id.</u>)  Plaintiffs also allege that Defendants handcuffed them,

escorted them outside, searched them, and left them in the heat for an extended period of time at temperatures exceeding 106 degrees.  (Id.)  Defendants allegedly ignored Plaintiffs' requests for shade and water and did not consider the age or infirmities of some of the Plaintiffs.  (Id.)

Further, according to Plaintiffs, Defendants allegedly destroyed Plaintiffs' property, including office cabinets, lockboxes, and the surveillance system unnecessarily. (Id. at 3–4.)  Plaintiffs also state Defendants refused to present the search warrants during the search but left behind two search warrants that did not identify the crimes investigated, a description of the property to be searched, or the items to be seized.  (Id. at 4.)

B.    North Grand Canyon Drive

The second search took place at 6295 North Grand Canyon Drive. (Id.) At the time of the search the following Plaintiffs were present at this location: Lee Belcher; Lori Kahre; George Rodriquez; Debra Rosenbaum; and Ismael Curiel.  (Id. at 4 n.3.)  The primary structure on the property is a one-story building containing several administrative offices for Robert Kahre.  (Id. at 4.)  The secondary structure on the property serves as the primary residence for Lori Kahre and Lee Belcher. (Id.)  A five foot cinder block wall surrounds the secondary structure separating it from the primary structure.  (Id.)

At approximately 4:30 p.m., Defendants allegedly broke through the

4

front door of the primary structure. (Id.)  Plaintiffs claim that once inside, the Defendants broke the glass out of the sliding glass door from the inside rather than unlocking it.  (Id.)  Plaintiffs state that Defendants took them into custody at gunpoint and searched and handcuffed them.  (Id.)  Plaintiffs also assert that Defendants shot non-lethal bags at Plaintiff Lee Belcher, hitting him once in the back and twice in the stomach.  (Id.)  Plaintiffs claim that Lee Belcher, Lori Kahre, and George Rodriguez all sustained injuries while Defendants took them into custody.  (Id.)  The search allegedly resulted in the unnecessary destruction of the sliding glass door as well as damage to the house from an explosive device detonated by Defendants.  (Id. at 4–5.)

> C.  Bledsoe Lane

The third search took place at 1555 Bledsoe Lane.  At this location is a single story house on a large lot surrounded by a wrought iron fence where the Kahres store and repair heavy equipment.  (Id. at 5.)  It is also the residence of Plaintiff Don Hamilton.  (Id.)  Plaintiffs allege that at approximately 4:10 p.m., Don Hamilton exited his house and saw Defendants outside the fence and surrounding the Bledsoe property.  (Id.)  They allegedly ordered him to raise his hands and pointed machine guns at him.  (Id.)  Plaintiffs claim that Defendants made Hamilton turn and face the wall while they cut the lock on the gate, despite Hamilton claiming to tell them they could scale the fence and retrieve the key from inside the residence.

(Id.)  Hamilton was subsequently taken into custody, searched, and handcuffed.
(Id.)

Finally, Plaintiffs allege that at approximately 1:30 p.m. Defendants
arrested Robert Kahre at Bank of the West.  (Id. at 5.)  Kahre was there to cash two
checks for a total of $230,913.00.  (Id.)  Defendants confiscated Kahre's shoulder
bag containing the money as well as other items.  (Id.)  Kahre was detained at Clark
County Detention Center until the following morning.  (Id.)

A.    Civil Complaint

In October 2003, Plaintiffs filed suit against an Assistant United States
Attorney in the Department of Justice ("DOJ"), Special Agents of the Internal
Revenue Service ("IRS"), federal strike force/SWAT team members, and North Las
Vegas Police Department ("NLVPD") officers, alleging numerous constitutional
violations.  (SAC ¶¶ 3–20.)  Plaintiffs' allegations arose primarily out of searches
conducted by Defendants at the three locations in Las Vegas, Nevada on May 29,
2003.  Specifically, the Second Amended Complaint alleged that Defendants
retaliated against Plaintiffs for engaging in protected First Amendment activity (id.
¶¶ 21–27); used excessive force, unreasonably detained Plaintiffs, and engaged in
the unnecessary destruction of property and other misconduct in the execution of
search warrants, in violation of the Fourth Amendment (id. ¶¶ 27–39); violated
Plaintiffs' Fifth and Fourteenth Amendment right to due process and freedom from

compelled self-incrimination by using grand jury proceedings to elicit evidence for use in civil tax cases (id. ¶¶ 62–65), utilizing warrantless arrests and excessive force to coerce bystanders to submit to interrogations (id. ¶¶ 66–71), and failing to serve search warrants to lawful tenants of property being searched (id. at ¶¶ 72–74); and, finally, conspired to violate Plaintiffs' First and Fourth Amendment rights (id. ¶¶ 75–77).

On February 18, 2004, Defendants filed Motions to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) or, in the alternative, for Summary Judgment ("Defendants' 2004 Motions"). (Dkt. ## 20–21.) On August 12, 2004, Plaintiffs filed their First Amended Complaint. (Dkt. # 53.) On October 4, 2004, United States District Judge Philip M. Pro granted in part and denied in part Defendants' 2004 Motions. ("Pro Order," Dkt. # 56.)

In his Order, Judge Pro found that under Ninth Circuit precedent, "no Bivens action may lie for any alleged constitutional violation stemming from the assessment and collection efforts of IRS agents whenever there [are] meaningful and adequate protections available to the plaintiff" under the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"). (Id. at 9.) Accordingly, he dismissed all claims against IRS agents regarding alleged violations of First Amendment rights and claims regarding the seizure of Robert Kahre's gold, silver, and other currency to satisfy unpaid federal tax obligations. (Id. at 11, 23.) Judge Pro found that

7

Robert Kahre was not present when the challenged search warrants were executed and thus did not have standing to challenge Defendants' failure to knock and announce and to present the warrant.  (Id. at 10–11.)  Judge Pro also dismissed Robert Kahre's claims regarding the sufficiency of the search warrant, all claims arising from alleged violations of the Fifth Amendment protection against self-incrimination, and claims against AUSA Damm relating to the drafting of the search warrant application and supporting affidavit.  (Id. at 24.)  Judge Pro denied Defendants qualified immunity with respect to Plaintiffs' claims for unreasonable detention and excessive force relating to a search at 6270 Kimberly Avenue; the unreasonable detention claims of certain of the Plaintiffs; and Plaintiff Lori Kahre's allegations that Defendants unlawfully entered her residence and detained her.  (Id. at 16, 19.)  Judge Pro found that Defendant Damm was not entitled to absolute immunity with respect to Plaintiffs' allegations that he planned every aspect of an unlawful raid, and denied Defendant IRS Agent Halper qualified immunity on Robert Kahre's unlawful arrest claim.  (Id. at 20–21, 24.)

Plaintiffs filed their Second Amended Complaint on November 14, 2005.  (SAC.)  The Second Amended Complaint named the following defendants: AUSA Damm; IRS Agents Halper, Mercedes Manzur, and Dennis Crowther ("Crowther"); and officers with the NLVPD.

In an Order dated May 22, 2006, the Court concluded that Plaintiffs'

claims against the NLVPD officers were barred by the statute of limitations, and therefore dismissed the state defendants from the lawsuit.  (Dkt. # 142.)

B.    Kahre's Indictment

In April 2005, shortly before Plaintiffs filed their Second Amended Complaint, the Government filed two criminal indictments against Kahre and other defendants.  Kahre was charged with, inter alia, willful failure to collect/pay over tax (26 U.S.C. § 7202); conspiracy to attempt to evade or defeat tax (18 U.S.C. § 371); and attempt to evade or defeat tax (26 U.S.C. § 7201).  (Case No. 05-cr-120-RCJ-RJJ-1; Case No. 05-cr-121-RCJ-RJJ-1).  On July 12, 2005, the Court stayed discovery proceedings pending resolution of the criminal cases against eleven of the Plaintiffs in the instant action.  (Dkt. # 99.)

On April 4, 2006, December 19, 2006, and November 20, 2007, the Government obtained respectively, superseding indictments (Case No. 05-cr-120-RCJ-RJJ-1, Dkt. # 124; Case No. 05-cr-121-RCJ-RJJ-1, Dkt. # 346), second superseding indictments (Case No. 05-cr-120-RCJ-RJJ-1, Dkt. # 217; Case No. 05-cr-121-RCJ-RJJ-1, Dkt. # 605), and a third superseding indictment (Case No. 05-cr-121-RCJ-RJJ-1, Dkt. # 1671).[1]

In 2009, three of the remaining Plaintiffs in the civil action were adjudged guilty in their criminal cases.  (See Case No. 2:05–cr–00121–RCJ–RJJ

---

[1] The Case No. 05-cr-120-RCJ-RJJ-1 case was incorporated into the third superseding indictment.

(hereinafter, "Crim. Dkt.").)  Specifically, John Kahre pleaded guilty to five counts of willfully attempting to evade and defeat tax (see Crim. Dkt. ## 605, 2614); Robert Kahre was found guilty of multiple counts of conspiracy to defraud, willfully failing to collect and pay over tax, attempting to interfere with the administration of the Internal Revenue law, attempting to evade and defeat tax, and wire fraud (see Crim. Dkt. ## 1671, 2615); and Lori Kahre was found guilty of multiple counts of conspiracy to defraud, attempting to interfere with the administration of the Internal Revenue law, making a false statement to a bank and attempting to evade and defeat tax (see Crim. Dkt. ## 1671, 2623).  Robert and Lori Kahre filed a Notice of Appeal.  (Crim. Dkt. # 2602.)

On December 5, 2013, the Ninth Circuit Court of Appeals affirmed the judgment of this Court and thus affirmed Robert Kahre's and Lori Kahre's convictions and sentences.  (Crim. Dkt. # 2849; United States v. Kahre, 737 F.3d 554, 583 (9th Cir. 2013).)  On February 6, 2014, the Ninth Circuit denied Defendants' Petition for Rehearing En Banc.  (Crim. Dkt. # 2852.)

## C.   RICO Complaint

On February 23, 2007, Plaintiff Robert Kahre commenced another lawsuit against many of the same Defendants in the instant civil case, alleging numerous Racketeer Influenced and Corrupt Organizations ("RICO") violations. (See Case No. 2:07–CV–00231–DAE–RJJ ("RICO Dkt.").)  The facts alleged in the

RICO Complaint related to the May 29, 2003 searches at the three locations and ended with the return of the second superseding indictment in December 2006. Federal Defendants moved to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1), (2), (5) and (6). Defendants also contended that the Nevada RICO claim should be dismissed because it was not appropriately brought in federal court.

This Court ultimately dismissed the myriad claims in that suit (RICO Dkt. # 95). The Court granted Federal Defendants' Motion to Dismiss pursuant to Rule 12(b)(6). With regard to the federal RICO claims, the court determined that the United States was the real party in interest, and that it had not waived its sovereign immunity. (Id. at 19–25.) Alternatively, this Court held that even if sovereign immunity was inapplicable, Kahre's complaint failed to establish the necessary elements to plead a federal RICO claim. (Id.) Kahre failed to meet the higher pleading standard applicable to RICO with regard to the "conduct element." (Id.) Numerous alleged acts were not predicate acts under RICO, and as to those acts that were, the Court found that they constituted legitimate government action that did not amount to criminal activity. (Id. at 25–28.) Moreover, the Court noted that the United States, the real party in interest, was incapable of forming the malicious intent to support a RICO action. (Id. at 28–29.) The Court also noted that because I.R.C. § 7433 provided the exclusive remedy for violations of the Internal Revenue Code by IRS employees, Kahre's claims with regard to tax collection

11

efforts were precluded.  (Id. at 29–31.)

Finally, the Court exercised its pendent jurisdiction over the Nevada RICO claim.  (Id. at 31–35.)  The Court determined that these claims should be dismissed for a variety of reasons, including that the allegation of violation of constitutional rights was irrelevant to a civil RICO action; that the complaint alleged harm to individuals who were not parties to the case; and Kahre could not establish the required number of "not isolated" predicate acts, because the events of May 29 were not isolated incidents, but were part of a single, coordinated operation.  (Id. at 35–39.)  This Court's decision was affirmed on appeal by the Ninth Circuit in June 2009.  (RICO Dkt. # 107.)

> D.    Civil Complaint Continues

The Court sua sponte lifted the stay in the civil proceedings on September 7, 2010, after Robert Kahre, Lori Kahre, and John Kahre were adjudged guilty in their criminal trials.  (Dkt. # 225.)  Only three Plaintiffs elected to proceed in the civil case: Robert Kahre, Lori Kahre, and Lee Belcher ("Belcher").  (Dkt. # 300 at 19.)  The other Plaintiffs were dismissed.  (Id.)

On November 15, 2010, Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment ("Defendants' 2010 Motion").  (Dkt. # 254.)  In its Order addressing Defendants' 2010 Motion, the Court identified five categories of claims that had not been dismissed in the Pro Order granting in part

and denying in part Defendants' 2004 Motions:

1.   Plaintiffs' claims for unreasonable detention arising from the execution of a search warrant at Kimberly Avenue;

2.   Plaintiffs' claims of excessive force by federal agents during the execution of a search warrant at Kimberly Avenue;

3.   Plaintiff Robert Kahre's claim for unlawful arrest against Defendant Halper;

4.   Plaintiffs' claims against Defendant Damm for the alleged planning of unlawful raids; and

5.   Plaintiff Lori Kahre's claim of unreasonable search and seizure.

(Dkt. # 300 at 20.)

The Court determined that Defendants were entitled to summary judgment with respect to the first and second claims of alleged misconduct at Kimberly Avenue, thus disposing of Plaintiffs' unreasonable detention and excessive force claims.  (Id.)  The Court noted that none of the remaining plaintiffs, including Robert Kahre, were present at Kimberly Avenue when the alleged misconduct took place, and thus "[did] not have standing to seek redress for constitutional injuries that other individuals sustained there."  (Id. at 21–22.) However, the Court denied Defendants' 2010 Motion with respect to Robert Kahre's unlawful arrest claim, Lori Kahre's claim that federal agents unlawfully searched her residence, and the claim that AUSA Damm planned unlawful raids.  (Id. at 23, 28.)  The Court found that Plaintiffs were entitled to a continuance for purposes of conducting further discovery as to those claims.  (Id. at 28 ("Plaintiffs are entitled to

13

a Rule 56(d) continuance for discovery purposes on the three remaining claims as outlined above.").)

Defendants then filed a Motion for Partial Summary Judgment as to Robert Kahre's wrongful arrest claim on September 29, 2011.  (Dkt. # 301.)  On April 24, 2012, after a hearing on the Motion, the Court issued an Order Granting Defendants' Motion for Partial Summary Judgment, thereby disposing of Robert Kahre's wrongful arrest claim.  (Dkt. # 319.)  On May 25, 2012, Robert Kahre filed a Motion for Reconsideration of this Court's April 24, 2012 Order.  (Dkt. # 325.)  On November 13, 2012, the Court denied the Motion for Reconsideration.  (Dkt. # 354.)

On May 21, 2012, Defendants moved to dismiss Robert Kahre's last remaining claim—the wrongful arrest claim, which was also the last claim against Halper—because they contended it had been disposed of by the Court's Order Granting Defendants' Motion for Partial Summary Judgment (Dkt. # 319).  (Dkt. # 321.)  Robert Kahre contended that he had live claims remaining in the case, including Fourth and Fifth Amendment claims for destruction of property and a claim that Defendant Damm planned unlawful raids in retaliation for Plaintiffs' protected First Amendment activity.  (Dkt. # 328.)  The Court denied Defendants' Motion, concluding that Robert Kahre's claim against Defendant Damm for planning unlawful raids and the subsequent property destruction appeared to still be

14

live.  (Dkt. # 363.)  Observing that the Second Amended Complaint is lengthy and
contains numerous claims and noting the long and complicated history of this
litigation, the Court instructed Robert Kahre to submit a list of claims he still wished
to pursue and believed survive the Court's prior rulings.  (Id. at 13.)  On December
26, 2012, Robert Kahre complied, submitting a Notice of Remaining Claims.  (Dkt.
# 366.)  The Notice stated that Robert Kahre believed the following claims remained
live:

1.    A First Amendment retaliation claim against Defendant Damm;

2.    Fourth and Fifth Amendment destruction of property claims;

3.    Fourth Amendment unlawful and unreasonable detention claims;

4.    Fourth and Fifth Amendment claims against Defendants Damm and
      Halper for planning an unlawful raid.

(Dkt. # 366 at 11–13.)

On November 6, 2012, Defendants filed a Motion for Summary
Judgment Regarding the Remaining Claim of Plaintiffs Lori Kahre and Lee Belcher
(Dkt. # 350), and on January 25, 2013, Defendants filed a Motion to Dismiss All
Remaining Claims or, in the Alternative, for Summary Judgment, in response to
Robert Kahre's Notice of Remaining Claims (Dkt. # 369).

On August 9, 2013, the Court granted Defendants' Motion for
Summary Judgment on the Remaining Fourth Amendment Claim of Plaintiffs Lori
Kahre and Lee Belcher (Dkt. # 350), thereby dismissing Lori Kahre and Lee

Belcher's claims of an illegal search, excessive force, and unlawful detention.  (Dkt. # 399 at 31–50.)   The Court found that the claims of an illegal search were barred by collateral estoppel because this Court upheld the lawfulness of the warrantless entry in Robert and Lori Kahre's criminal trial.  (Id. at 34.)  The Court granted Defendants summary judgment on Belcher's excessive force claims because he refused several orders to approach and lie down on the ground, thus prolonging the officers' exposure to risk from individuals still inside the home.  (Id. at 35–39.)  The Court granted Defendants summary judgment on Lori Kahre's excessive force claims because the officers used objectively reasonable force to subdue her, indeed her injuries were caused by her physical struggle to break free from the officers. (Id. at 39–41.)  The Court also granted Defendants summary judgment on Lori Kahre's unlawful detention claims because Lori Kahre was not "seized" within the meaning of the Fourth Amendment, and even if she had been, the seizure was reasonable as the officers "had a legitimate interest in ensuring their own safety during the search . . .  and they did so by giving Lori Kahre the choice to leave the secure site or remain [restrained] and watch."  (Id. at 48.)

With respect to Robert Kahre's claims, the Court granted in part and denied in part Defendants' Motion to Dismiss.  First, the Court held that Robert Kahre's First Amendment Retaliation claim against Defendant Damm did not meet the heightened pleading standard required to show that Damm "intended to chill"

16

Robert Kahre's speech.  (Id. at 16–19.)  The Court then held that Robert Kahre's Fourth and Fifth Amendment claims for stolen currency were either dismissed in Judge Pro's earlier Order or failed to allege sufficient facts demonstrating that the currency was stolen.  (Id. at 19–22.)  However, the Court found that Robert Kahre's Fourth Amendment claim for property destruction (alleging that the officers gratuitously destroyed Robert Kahre's property during the execution of the search warrant) remained live and that Defendants were not entitled to a dismissal of that claim because "[t]aking [Robert Kahre's] allegations of fact as true, . . . the destruction of property alleged was not reasonably necessary to effectuate the performance of the officer's duties, and may therefore have been unreasonable under the Fourth Amendment."  (Id. at 25.)  The Court reminded that while the allegations that Damm and Halper had an "operational plan," whereby they planned and directed the unnecessary property destruction was sufficient to state a claim, Defendants "may not be held liable for the constitutional violations of subordinates."   (Id. at 26 (citing Terrell v. Brewer, 935 F.2d 1015, 1018 (9th Cir. 1991)).)  The Court permitted Robert Kahre to depose Damm and Halper "for the very limited purpose of determining whether they directed the property destruction that occurred during the execution of the search warrant at 6270 Kimberly Avenue." (Id. at 30.)  The Court noted, however, that "[i]f the evidence fails to establish that Damm and Halper directed any property destruction, Defendants may renew their

17

motion for summary judgment and the Court will enter judgment in Defendants'
favor on Plaintiff's last remaining claim."  (Id. at 31.)

On September 9, 2013, Defendants requested that the Court set a
deadline for Robert Kahre to depose Halper and Damm by October 25, 2013.  (Dkt.
# 400.)  Robert Kahre responded, arguing that the deadline should be no earlier than
February 5, 2014.  (Dkt. # 401.)  The Court ordered that the depositions must take
place on or before November 15, 2013.  (Dkt. # 403.)  Robert Kahre filed a Motion
to Reconsider (Dkt. # 404), which the Court subsequently denied (Dkt. # 406).  The
Court reasoned:

> Although the Court is sympathetic to Plaintiff counsel's vacation
> and trial schedule, the Court emphasizes that the depositions of Mr.
> Halper and Mr. Damm have a limited focus. (See Dkt. # 399 at 30–31
> ("Plaintiff may depose Damm and Halper for the very limited purpose
> of determining whether they directed the property destruction that
> occurred during the execution of the search warrant at 6270 Kimberly
> Avenue."))
>
> Given the ten-year history of this case, counsel should have
> extreme familiarity with the issues involved in Plaintiff's sole-
> remaining claim and, as such, the depositions should not entail
> extensive preparation.  Further, counsel has had ample notice of the
> depositions.
>
> Because the court denied the government's Motion to Quash and
> Motion for a Protective Order, (Dkt. # 347), on October 26, 2012,
> further delay might prejudice Defendants.

(Dkt. # 406 at 2.)

Defendants Damm and Halper now seek summary judgment on Robert

Kahre's last remaining Fourth Amendment claim for property destruction.  ("Mot.," Dkt. # 409-1.)  Along with their Motion, Defendants filed a Concise Statement of Material Facts.  (Dkt. # 409-3.)  On December 19, 2013, Robert Kahre filed a Response to Defendants' Motion ("Resp.," Dkt. # 413) and also filed Objections to Defendants' Concise Statement of Material Facts ("Obj.," Dkt. # 414).  Defendants then filed a Reply.  ("Reply," Dkt. # 418.)

## LEGAL STANDARD

Summary judgment is granted under Federal Rule of Civil Procedure 56 when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial—usually, but not always, the defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire &

Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden

initially falls upon the moving party to identify for the court those "portions of the

materials on file that it believes demonstrate the absence of any genuine issue of

material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626,

630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

      Once the moving party has carried its burden under Rule 56, the

nonmoving party "must set forth specific facts showing that there is a genuine issue

for trial" and may not rely on the mere allegations in the pleadings.  Porter, 419

F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

In setting forth "specific facts," the nonmoving party may not meet its burden on a

summary judgment motion by making general references to evidence without page

or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir.

2003).  "[A]t least some 'significant probative evidence'" must be produced.  T.W.

Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co.,

391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely

colorable or not significantly probative does not present a genuine issue of material

fact."  Addisu, 198 F.3d at 1134.  Further, the Ninth Circuit has "refused to find a

'genuine issue' where the only evidence presented is 'uncorroborated and self-

serving' testimony."  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th

Cir. 2002) (citing Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996)).

"Conclusory allegations unsupported by factual data cannot defeat summary judgment." Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1078 (9th Cir. 2003).

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631. In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. Id.; see also Nelson v. City of Davis, 571 F.3d 924, 927 (9th Cir. 2009) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." (citations omitted)). However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

## DISCUSSION

Defendants Damm and Halper move for summary judgment on Robert Kahre's (hereinafter, "Kahre" or "Plaintiff") remaining Fourth Amendment claim. Specifically, Defendants seek summary judgment on Kahre's claim as it relates to

alleged property destruction including "driving a personnel carrier through an unlocked gate without attempting to open the gate without force; smashing surveillance cameras and pulling them out of walls; and prying upon unlocked file cabinets and lockboxes with a crowbar at the Kimberly site." (Mot. at 7.)

I.    Continuance Under Rule 56(d) for Additional Discovery

Before addressing the merits of Defendants' Motion for Summary Judgment, Kahre first requests a continuance pursuant Federal Rule of Civil Procedure 56(d) because he "has only been allowed to conduct limited discovery" as to Defendants Damm and Halper. (Obj. at 10.) He asserts that Defendants "have not been forthcoming with the specific identities of all individuals who participated in the pre-operational briefings." (Resp. at 15.) Specifically, he alleges that Halper now relies on FBI agent Robert Hunt's actions on the day of the raids to defend against the property destruction claims, but Halper had refused to identify Hunt in previous interrogatories. (Id.) Similarly, he contends that Damm "has only very recently identified . . . the individuals who could verify the degree and scope of his involvement and verify his version of events, i.e., [Assistant United States Attorneys] Kimberly Frayne and Kurt Schuelke." (Id.) As a result, he requests a continuance to depose Robert Hunt, Kimberly Frayne, Kurt Schuelke, and additional NLVPD, FBI, and IRS personnel, as well as to obtain an unredacted copy of an FBI document identifying the FBI agents who participated in the initial entry at the

22

Kimberly site.  (Id. at 14–15.)

Rule 56(d)[2] provides a device for litigants to avoid summary judgment

when the non-movant needs to discover affirmative evidence necessary to oppose

the motion.  See Garrett v. San Francisco, 818 F.2d 1515, 1518 (9th Cir. 1987).  If a

non-movant demonstrates a need for further discovery in order to obtain facts

essential to justify the party's opposition, a trial court may deny the motion for

summary judgment or continue the hearing to allow for such discovery.  See Fed. R.

Civ. P. 56(d); Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998).

The non-movant requesting a continuance, denial, or other order under

Rule 56(d) continuance request must demonstrate: "(1) it has set forth in affidavit

[or declaration] from the specific facts it hopes to elicit from further discovery;

(2) the facts sought exist; and (3) the sought-after facts are essential to oppose

summary judgment."  Family Home & Fin. Ctr., Inc. v. Fed Home Loan Mortg.

Corp., 525 F.3d 822, 827 (9th Cir. 2008); see also Fed. R. Civ. P. 56(d) ("If a

nonmovant shows by affidavit or declaration that, for specified reasons, it cannot

present facts essential to justify its opposition . . . ." (emphasis added)).

"The burden is on the party seeking additional discovery to proffer

---

[2] In 2010, Congress revised Rule 56, replacing former Rule 56(f) with Rule 56(d).
See Advisory Committee Notes to 2010 Amendments ("Subdivision (d) carries
forward without substantial change the provisions of former subdivision (f).").
Accordingly, citations to previous case law may refer to Rule 56(f), but the analysis
applies equally to current Rule 56(d).

sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." Chance v. Pac-Tel Teletrac Inc., 242 F.3 1151, 1161 n.6 (9th Cir. 2001); see also Tatum v. City & Cnty. of S.F., 441 F.3d 1090, 1100 (9th Cir. 2006). The party must also show that it was diligent in pursuing its previous discovery opportunities. See Qualls v. Blue Cross of Cal., Inc., 22 F.3d 839, 844 (9th Cir. 1994). Failing to meet this burden warrants denying a Rule 56(d) motion. Pfingston v. Ronan Eng. Co., 284 F.3d 999, 1005 (9th Cir. 2002).

    1.   AUSA Kimberly Frayne ("Frayne") and AUSA Kurt Schuelke ("Schuelke")

Kahre argues that a continuance is necessary so that he can have an opportunity to depose Frayne and Schuelke to determine the scope of Defendant Damm's involvement in the planning of the raids at the Kimberly site. (Resp. at 15; "Rasmussen Decl.," Dkt. # 413 at 24.)

However, Kahre has not tendered any evidence to suggest that either Frayne or Schuelke were affiliated with the Kimberly site search warrant execution, much less had any knowledge of Damm allegedly planning the property destruction at the Kimberly site, and a continuance under Rule 56(d) requires a party "show that it lacks 'facts essential' to resist the summary judgment motion." McCormick v. Fund Am. Cos., Inc., 26 F.3d 869, 885 (9th Cir. 1994). Rather, it appears that Frayne and Schuelke were primarily responsible for advising on the search warrant

procedures for the Grand Canyon site—not the Kimberly site.  The Search Warrant

Plan for the Grand Canyon site produced by the Internal Revenue Service's

Criminal Investigation Unit reads,

> Per Kurt Schulke and AUSA Kimberly Frayne the raid team will ask
> for consent to search the secondary building [of the Grand Canyon
> site].  If consent is not granted, the agents will search the building for
> officer safety.  The vehicles are not included in the search.  If we are
> granted consent, search these areas.

 (Dkt. # 410-7, Ex. G at 7.)  Because Kahre does not show how a deposition of

either Frayne or Schuelke would assist him in creating an issue of material fact

regarding any property destruction, much less property destruction at the Kimberly

site or any information regarding Damm allegedly directing or planning property

destruction at the Kimberly site, a continuance is unwarranted.

　　　　　In any event, Defendants already disclosed the Grand Canyon site

Search Warrant Plan containing the names of Frayne and Schuelke in June 2012—

over a year-and-a-half before Defendants filed their instant Motion.  (See Reply at

7.)  Kahre has had ample opportunity to depose Frayne and Schuelke, or at least

seek a motion to compel, since he learned their identities.  See Krav Maga Ass'n of

Am., Inc. v. Yanilov, 464 F. Supp. 2d 981, 992 (C.D. Cal. 2006) ("A district court

may, within its discretion, deny a Rule 56(f) motion for further discovery if the

moving party failed to "diligently pursue[ ] its previous discovery opportunities."

(quoting Qualls v. Blue Cross of Cal., 22 F.3d 839, 844 (9th Cir. 1994))); Nidds v.

Schindler Elevator Corp., 113 F.3d 912, 921 (9th Cir. 1996) (holding that "the district court does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past").  Having failed to depose either Frayne or Schuelke for nearly a year-and-a-half before Defendant filed its Motion, Kahre "cannot complain if [he] fails to pursue discovery diligently before summary judgment."  Frederick S. Wyle, P.C. v. Texaco, 764 F.2d 604, 612 (9th Cir. 1985).

        2.     Robert Hunt ("Hunt")

Kahre also argues that because Halper did not disclose Hunt, an FBI Agent who was present at the pre-operational meeting before the execution of the search warrant at the Kimberly site, until his deposition on October 30, 2013, he is entitled to a continuance, presumably to allow time to depose Hunt.  (Resp. at 14–15.)

Kahre does not assert what facts, if any, Hunt could disclose in such a deposition.  In the absence of such assertions, he is not entitled to a continuance. See Tatum, 441 F.3d at 1100 ("A party requesting a continuance pursuant to Rule 56(f) must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." (emphasis added)).

Moreover, Kahre fails to set forth any facts regarding Hunt in the form

of an affidavit or declaration, as specifically required by Rule 56(d).  <u>See</u> Fed R.

Civ. P. 56(d) ("If a nonmovant shows <u>by affidavit or declaration</u> that, for specified

reasons, it cannot present facts essential to justify its opposition . . . ." (emphasis

added)); <u>Brae Transp., Inc. v. Coopers & Lybrand</u>, 790 F.2d 1439, 1443 (9th Cir.

1989) ("References in memoranda . . . to a need for discovery do not qualify . . . .").

Instead, the Rasmussen Declaration only requests that he be able to depose "at least

one FBI agent" that was present at the pre-operational meeting.  (<u>See</u> Rasmussen

Decl. at 23–25.)   Because Kahre improperly requested a continuance to depose

Hunt, his failure to comply with Rule 56(d) warrants denying his continuance

request.  <u>See, e.g.</u>, <u>United States v. Kitsap Physicians Serv.</u>, 314 F.3d 995, 1000 (9th

Cir. 2002) ("Failure to comply with these requirements is a proper ground for

denying relief.").

### 3.   <u>"At least one member of the IRS, FBI and NLVPD"</u>

Kahre also seeks to depose at least one member of the IRS, FBI, and

NLVPD so that he can "ventilate Mr. Halper's assertions as to what took place and

what was said (and not said)."  (Resp. at 15; Rasmussen Decl. at 23–25.)

In <u>Davis v. G.N. Mortgage Corp.</u>, the Seventh Circuit denied a Rule

56(f) motion that the plaintiff had requested for reasons nearly identical to those of

Kahre.  396 F.3d 869, 885 (7th Cir. 2005).  There, the court held that the plaintiffs

had failed to set forth any specific evidence which they might have obtained from

the requested depositions of the defendants' employees regarding the location of the

two-year prepayment penalty rider signed by the plaintiffs.  Id.  The court noted that

> [t]he only reason to believe that additional, relevant evidence would
> materialize from deposing the defendants' employees is the [plaintiffs']
> apparent hope of finding a proverbial "smoking gun"—that is, someone
> who will testify that he or she knows that a signed, two-year
> prepayment penalty provision did actually exist at some time and that
> the defendants have either hidden, destroyed, or otherwise disposed of
> this document.

Id.  However, such reasoning, the court reminded, is "based on nothing more

than mere speculation and would amount to a fishing expedition, which is an

entirely improper basis."  Id.

   As in Davis, Kahre's reasoning for a continuance fails to set forth any

specific evidence which might be obtained from such depositions.  Rather, he seeks

to depose these individuals in the "apparent hope of finding a proverbial 'smoking

gun,'" id., namely, an admission that Halper directed or planned the search warrant

execution at the Kimberly site to include property damage.  Kahre's hopes to

uncover incriminating evidence against Halper during such depositions are purely

speculative.  See Margolis v. Ryan, 140 F.3d 850, 854 (9th Cir. 1998) (noting that

facts sought in a Rule 56(f) motion must be based on more than mere speculation);

State of Cal., on Behalf of Cal. Dep't of Toxic Substances Control v. Campbell, 138

F.3d 772, 779–80 (9th Cir. 1998) ("[D]enial of a Rule 56(f) application is proper

where it is clear that the evidence sought is almost certainly nonexistent or is the

object of pure speculation." (quoting <u>Terrell v. Brewer</u>, 935 F.2d 1015, 1018 (9th Cir. 1991))).  Rule 56(f) "is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that is opposition is meritorious."  <u>United Sates v. On Leong Chinese Merch. Assoc. Bldg.</u>, 918 F.2d 1289, 1294–95 (7th Cir. 1990).

        4.    <u>FBI Document</u>

Finally, Kahre requests the names of FBI agents that were redacted by the FBI in LETTS/PAU Arrest Plan Form (the "FBI document") prepared on or about May 26, 2003.  (Resp. at 14; Rasmussen Decl. at 25.)  Kahre proffers that Defendant Halper provided the FBI document at his October 30, 2013 deposition. (Rasmussen Decl. at 25.)  According to Kahre, Halper intimated that an unredacted version of the FBI document contains identifying information of the FBI agents that participated in the initial entry at the Kimberly site.  (<u>Id.</u>)

As a preliminary matter, the Court is unsure whether Defendants even possess an unredacted version of the FBI document.  Even Kahre admits that "federal defendants' November 25, 2013 response demonstrates that they have still not clearly stated whether Mr. Halper received an unredacted version of the document or not" (<u>id.</u> (citing "Def. Interrogatory Resp.," Dkt. # 413, Ex. C)) and "Mr. Halper's most recent declaration has maintained the ambiguity as to whether or not the document was provided to Mr. Halper unredacted" (<u>id.</u> (citing "Fourth Decl.

of Jared Halper," Dkt. # 409-3 ¶ 2 ("Attached hereto as Exhibit A is a true and correct partial copy (with redactions) of an FBI document provided to me on or about May 29, 2003 by the FBI.")).)

But even if Defendants do possess an unredacted version of the FBI document, Kahre does not indicate how the names of such individuals will assist him in defending against the instant Motion for Summary Judgment; he only claims that "it purports to identify the individuals who participated in the initial entry at the Kimberly location and the Bledsoe location and the actions they took." (Id.) This is insufficient for purposes of a Rule 56(d) continuance. Miles v. Sec'y of Army, 947 F.2d 950 (9th Cir. 1991) ("The party seeking continuance under Rule 56(f) may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts.").

Moreover, the Court is unsure how the names of the individuals listed on the FBI document could assist Kahre in creating an issue of material fact regarding Damm and Halper's alleged planning of the search warrant execution. See Mackey v. Pioneer Nat'l Bank, 867 F.2d 520, 524 (9th Cir. 1989) ("A Rule 56(f) motion must show how additional discovery would preclude summary judgment . . . ."). Neither Damm nor Halper drafted the FBI document. Indeed, at the bottom of every page the document reads: "This document has been prepared by the Federal Bureau of Investigation." (Dkt. # 409-4.) In addition, there are no

30

noticeable references to either Damm or Halper in the document.  The only

reference to Internal Revenue Service Agents is included in a section entitled,

"Other Law Enforcement Personnel" and lists only that there will be fifteen Internal

Revenue Service agents to assist at the Kimberly site.  (Id. at 3.)  And the only

reference to United States Attorney's Office reads: "Per AUSA, occupants of any

and all out-buildings will be asked for consent prior to the buildings being cleared."

(Id. at 6.)

   Ostensibly, Kahre wants to obtain the FBI agents' names and depose

these individuals in hopes that they will "expose" Damm and Halper's involvement.

However, he cannot point to any evidence to even suggest that the FBI agents would

testify to that effect.  See VISA Int'l Serv. Assoc. v. Bankcard Holders, 784 F.2d

1472, 1475 (9th Cir. 1986) (noting that courts generally deny Rule 56(f) motions

where it is clear that evidence sought is almost certainly nonexistent or the object of

pure speculation).

   As a final, but perhaps most important matter, the Court emphasizes

that it has already granted Kahre a Rule 56(d) continuance back on September 2,

2011—over two years before Defendants filed the instant motion.  (See Dkt. # 300

at 28.)  The Court found that a Rule 56(d) continuance was appropriate regarding

Kahre's unlawful planning claim against Damm, specifically finding "Plaintiffs are

entitled to discovery to flesh out fully the extent to which Damm may have been

involved." (Id. at 27–28.)  However, even after this Court specifically granted such a continuance, Kahre did not diligently pursue discovery on his unlawful-planning claim for over two years.  A continuance is unwarranted under such circumstances. See, e.g., Chance, 242 F.3d at 1161 n.6 (stating that a district court does not abuse its discretion if the moving party "failed diligently to pursue discovery").

In sum, Kahre has not satisfied his burden for a Rule 56(d) continuance request.  He fails to demonstrate that the requested discovery exists or will create an issue of material fact regarding Halper's and Damm's alleged planning of the search warrant execution.  See Pfingston, 284 F.3d at 1005 (holding that failing to meet the burdens for a Rule 56(f) motion "is grounds for the denial").  Accordingly, the Court **DENIES** his request for a continuance.

## II.   Scope of Defendants' Motion for Summary Judgment

### A.   Scope of Alleged Damages

Turning to Defendants' Motion, Kahre next argues that Defendants "do not dispute or address" additional alleged damages, including: (1) "slamming the gate into the rear of two trucks," (2) "smashing of doors with sledge hammers," and (3) "breaching of safes with crowbars," so they must not be seeking summary judgment as to those claims.[3]   (Resp. at 4–5.)  Defendants counter that those

---

[3] As noted above, Defendants' Motion expressly seeks summary judgment on the alleged property destruction described in the Court's August 9, 2013 Order, including:  "driving a personnel carrier through an unlocked gate without attempting

references in paragraph 99 of the Second Amended Complaint appear to be in the nature of background information, rather than proper allegations.  (Reply at 4–5.) And even if the Court included those references as allegations, those damages can be easily subsumed by the remaining Fourth Amendment property destruction claim as outlined in the Court's Order (Dkt. # 399) and Defendants' Motion.  In other words, Defendants argue that Kahre's references to "slamming the gate into the rear of two trucks" is sufficiently analogous to Defendants' citation to "driving a personnel carrier through an unlocked gate without attempting to open the gate without force"; Kahre's reference to "smashing of doors with sledge hammers" is similar to Defendants' citation to "smashing surveillance cameras and pulling them out of the walls"; and Kahre's mentioning of "breaching the safes with crowbars" resonates with Defendants' citation to "prying open unlocked file cabinets and lockboxes with crowbars."  (Id.)

Without addressing whether Kahre's Second Amended Complaint correctly identifies the aforementioned three property references as "allegations,"[4]

---

to open the gate without force; smashing surveillance cameras and pulling them out of walls; and prying upon unlocked file cabinets and lockboxes with a crowbar." (Mot. at 2.)

[4] The Second Amended Complaint does not list Kahre's specific claims to include the aforementioned three additional instances of property destruction.  Instead, the paragraphs of the Second Amended Complaint that do mention the "slamming the gate into the rear of two trucks" (SAC ¶¶ 97, 99), "smashing of doors with sledge hammers" (id. ¶ 99), and "breaching the safes with crowbars" (id.) are in a general

the Court finds that Defendants' Motion does seek summary judgment on those

references.  Kahre is merely parsing Defendants' Motion to resuscitate certain

claims, despite the fact that the three property-damage references are encompassed

in the Motion.  As this Court has previously observed, the Second Amended

Complaint is lengthy, contains numerous claims, and has necessitated long and

complicated litigation.  (See Dkt. # 363 at 13.)

      B.    Bledsoe Location

      Kahre also argues that Defendants do not address the property damage

at the Bledsoe location, so Plaintiff's claims regarding the Bledsoe location must

survive.  (Resp. at 4–5 (citing SAC ¶¶ 429–33).)  Defendants argue, however, that

"[t]he alleged property damage at the Bledsoe site appears to be damage to the 'lock

on [Don] Hamilton's gate'," and then argue that Kahre cannot litigate the

constitutional claims of others.  (Reply at 3–4.)

      Defendants are correct that the Second Amended Complaint references

to the Bledsoe Lane property refer exclusively to the property damage claims of

---

background section entitled "Statement of Facts," and merely discuss the execution
of the search warrant at the Kimberly Avenue location.  Although Kahre
"incorporate[d] paragraphs 1 through 508" in his Prayer for Relief, it is
understandable that Defendants did not glean every specific allegation of property
damage contained within the lengthy Statement of Facts.  Moreover, it is quite
possible that Kahre's counsel, Lisa Rasmussen, shared the same confusion because
her recent deposition of Defendants Halper and Damm did not mention the trucks or
the doors.  Instead, she only asked about the gate (Halper Dep. 45:17–21), the
cameras (id. 45:22–46:6), and the safes/lockboxes (id. 48:16–50:5).

"Plaintiff Don Hamilton," (SAC ¶¶ 421–51), who was dismissed from the litigation on March 31, 2011 (Dkt. # 286 at 16).[5]  In fact, the Second Amended Complaint specifically states, "Mr. Hamilton and his wife reside on the Bledsoe Lane property" (SAC ¶ 421) and "[a]n agent ordered one of the agents to cut the lock on Hamilton's gate" (id. ¶ 429 (emphasis added)).  The only reference to Robert Kahre contained in the "Bledsoe property section" of the Second Amended Complaint reads: "Plaintiff Robert Kahre stores and repairs heavy equipment used in his construction businesses, construction supplies, court documents and books and records at the Bledsoe Lane location."  (Id. ¶ 412.)  However, the Court has searched in vain for any reference that Kahre's property was damaged at the Bledsoe location.  In fact, the only property damage gleaned from the Bledsoe Lane section of the Second Amended Complaint reveals that Don Hamilton's gate lock was cut.  Therefore, because "a person cannot assert the constitutional rights of others," Heilberg v. Fixa, 236 F. Supp. 405, 407 (N.D. Cal. 1964), aff'd sub nom. Lamont v. Postmaster Gen. of U.S., 381 U.S. 301 (1965), the Court finds that the Second Amended Complaint does not contain a Fourth Amendment property destruction claim on behalf of Robert Kahre at the Bledsoe location.

---

[5] Plaintiff Don Hamilton was dismissed from the litigation because he did not respond to the Court's earlier "Intent Order," which had required each Plaintiff wishing to proceed with the action (after the lengthy stay was lifted) to respond and so indicate by October 18, 2010 or the claims would be dismissed.

III.   <u>Merits of Defendants' Motion for Summary Judgment</u>

As noted above, Kahre's remaining claim involves the property destruction that allegedly occurred on May 29, 2003, during the execution of a federal search warrant at 6270 Kimberly Avenue, Las Vegas, Nevada (the "Kimberly site").  As this Court clarified in its earlier Order, the relevant inquiry on Kahre's remaining claim is whether Defendants Damm and Halper "devised a plan whereby they directed the officers who executed the search warrants to commit the constitutional violations alleged in the SAC."  (Dkt. # 399 at 27; <u>see also</u> <u>id.</u> at 30–31 ("Plaintiff [Kahre] may depose Damm and Halper for the <u>very limited purpose</u> of determining whether they directed the property destruction that occurred during the execution of the search warrant at 6270 Kimberly Avenue. . . . If the evidence fails to establish that Damm and Halper directed any property destruction, Defendants may renew their motion for summary judgment and the Court will enter judgment in Defendants' favor on Plaintiff's last remaining claim.").)

Defendants divide up their summary-judgment arguments into three discernible instances of alleged property destruction: (1) driving a personnel carrier through an unlocked gate, thereby damaging the gate and two parked trucks nearby; (2) smashing surveillance cameras and doors; and (3) prying open unlocked file cabinets and safes with crowbars.  For each of these instances, Defendants contend that they neither planned nor directed the search warrant execution, much less the

36

property destruction that resulted.

1.   <u>Driving a Personnel Carrier Through an Unlocked Gate, Resulting in
Damage to the Gate and Two Parked Trucks Nearby</u>

Defendants first argue that neither of them participated in the initial
entry of the Kimberly site, which caused the alleged damage to the gate and two
parked trucks nearby.  (Mot. at 7.)  Instead, while the FBI and NLVPD initially
entered the Kimberly site, Halper was at another location, the Bank of the West in
Henderson, Nevada, where Robert Kahre was being arrested.[6]  (Dkt. # 409-2 ¶¶ 18–
19 (citing "First Halper Decl.," Dkt. # 22 at 69–70 ¶¶ 22–27).)  And AUSA Damm
had left for a trip abroad on May 21, 2013 (eight days before the execution of the
search warrant) and did not return to Las Vegas until May 30, 2003 (a day after the
execution).  (<u>Id.</u> ¶ 33 (citing "First Damm Decl.," Dkt. # 22 at 129 ¶ 11).)

Defendants also argue that they did not give any directions or
instructions to the FBI and NLVPD as to how the initial entry at the Kimberly site
should be carried out.  (Mot. at 7.)  Halper contends that he never told FBI Agent
Hunt, the leader of the Kimberly site search, nor the NLVPD how the FBI or the

---

[6] The arrest warrant for Robert Kahre was predicated on a bench warrant for failure
to appear in District Court for Clark County, Nevada in the case of <u>State of Nevada
Department of Economic Security v. Robert Kahre, Wright Painting and Drywall</u>,
Case No. A422127.  (First Halper Decl. ¶ 23.)  A criminal apprehension team
arrested Robert Kahre and his armed body guard.  (<u>Id.</u>)  Halper only conducted
surveillance at the Bank of the West, and once Robert Kahre was arrested, Halper
only approached him to ask if he would like to cooperate with law enforcement's
execution of search warrants at the Kimberly site.  (<u>Id.</u> ¶ 24; "Third Halper Decl.,"
Dkt. # 254, Ex. 4 ¶ 3.)

NLVPD should carry out the initial entry at the Kimberly site.  (Dkt. # 409-2 ¶ 14

(citing "Halper Dep.," Dkt. # 410-1, Ex. A 63:1–20 Oct. 30, 2013).)   In fact, Halper

contends that he did not give the FBI or the NLVPD "any direction whatsoever."

(Id. ¶ 15 (citing Halper Dep. 64:25–65:4).)  Damm asserts that prior to leaving for

his international trip on May 21, 2003, he did not give directions or instructions

"concerning how any part of the [searches at the Kimberly site and other sites that

were searched on May 29, 2013] should be carried out."  (Id. ¶ 34 (citing First

Damm Decl. at 128 ¶¶ 4–5).)

   In regards to Damm's involvement, Kahre has not tendered any

evidence that Damm directed or planned the execution of the search warrant.  (See

Resp. at 16–19.)  With respect to Halper's involvement, Kahre only asserts that

Halper has previously participated in "pre-operational briefings on May 5, 2003,

May 26, 2003, May 28, 2003, or May 29, 2003 where the execution of the search

warrants and entry procedures were allegedly discussed and planned along with the

FBI, IRS and NLVPD personnel," which "indicates that [Halper] had

conversation[s] with IRS personnel about the planning of the raids . . . ."  (Resp. at

13–14.)  Kahre cites Halper's First Declaration submitted to the Court on February

18, 2004, which provides in relevant part:

  21. On May 28, 2003, after the search warrants were approved, I
  held a pre-operational briefing at the IRS building.  Present at this
  meeting were all of the IRS agents that were to participate in the search

warrants.  At this meeting, the affidavit was disseminated to every IRS agent involved in the search warrants.  All participants signed a log stating that they read the affidavit.  During this briefing I disseminated to all participants a copy of the search warrant plan, risk assessment guide, enforcement action review form, and items to be seized list.  At the end of this briefing, I informed all of the team leaders to meet at the FBI building on May 29, 2003 for a pre-operational briefing with FBI-SWAT, NLV-SWAT, and the criminal apprehension team.

22.    On May 29, 2003 the IRS Criminal Investigation (CI) team leader and I met at the FBI building to discuss the entries and clearing procedures for the search warrants.  At this meeting I gave an overview of the investigation of Robert Kahre.  The FBI-SWAT leader briefed everyone present on the entry and clearing procedures that the FBI-SWAT team would utilize at the Kimberly Avenue (Suite C) and 1555 Bledsoe Lane search warrant locations.  NLV-SWAT briefed everyone on the entry and clearing procedures that the NLV-SWAT team would utilize at the Kimberly Avenue (Suite D) and North Grand Canyon Drive search warrant locations.  The criminal apprehension team briefed everyone on the arrest of Robert Kahre pursuant to the Bench Warrant which I had obtained from the court clerk for Judge Mark Denton of the District Court for Clark County, Nevada.  Once this meeting was complete the IRS team leaders met their search teams at a pre-determined location and briefed the IRS agents.

(Resp. at 14 (citing First Halper Decl. at 67–68 ¶¶ 21–22).)

However, Halper's Declaration does not indicate that he "participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  First, his Declaration only affirms that he discussed the entries and clearing procedures—not that he discussed that the entries and clearing procedures would involve property damage, which is the relevant inquiry for supervisory liability under Bivens.  See

Preschooler II v. Clark Cnty. Sch. Bd. of Trustees, 479 F.3d 1175, 1183 (9th Cir.

2007) (holding that supervisory liability under § 1983 requires an official to "set[] in

motion a 'series of acts by others which the actor knows or reasonably should know

would cause others to inflict' constitutional harms" (emphasis added) (quoting

Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978))).  Second, Halper only avers

that he discussed the entries and clearing procedures with the IRS Criminal

Investigation (CI) team—not the FBI or the NLVPD, which were the two agencies

responsible for the initial entry causing the gate and truck damage.  Instead, as

Halper's Declaration recites: "The FBI-SWAT leader briefed everyone present on

the entry and clearing procedures that the FBI-SWAT team would utilize at the

Kimberly Avenue (Suite C) and 1555 Bledsoe Lane search warrant locations.  NLV-

SWAT briefed everyone on the entry and clearing procedures that the NLV-SWAT

team would utilize at the Kimberly Avenue (Suite D) and North Grand Canyon

Drive search warrant locations."  (First Halper Decl. at 68 ¶ 22.)

Put another way, Kahre's evidence does not create an issue of material

fact that Halper directed the property damage sufficient to defeat summary

judgment.  His theory that Halper must have somehow directed the damage to the

gate and to the two trucks during these pre-operational briefings "establishes only

that this set of events could have conceivably occurred; it does not give rise to a

reasonable inference that it did in fact occur."  United States ex. rel. Cafasso v. Gen

40

<u>Dynamics C4 Sys., Inc.</u>, 637 F.3d 1047, 1061 (9th Cir. 2001).  "To find liability on

this evidence would require undue speculation."  <u>Id.</u>

   Kahre only addresses Defendants' second justification for the property

destruction, namely that the property damage was "'reasonably necessary' since a

surprise entry by force would have likely contributed to ensuring the safety of the

government agents who were involved."  (Mot. at 7–8.)  According to Defendants,

through his investigation, Halper learned that Robert Kahre (1) had armed security

details at several of his properties, (2) had ample evidence that IRS-CID agents are

not federal law enforcement officers, and are not authorized to carry firearms, (3)

believed the IRS employees were "operating as agents of a foreign principal in

violation of a number of state and federal criminal statutes," and (4) did not want the

IRS to send any armed personnel to any of his properties unless he was contacted

first because he wanted to avoid "physical injury, harm or loss of life to anyone."

(Mot. at 3 (citing Dkt. # 410, Ex. C (August 7, 2000 Letter from Robert Kahre)).)

As a result of this letter, and additional information tendered by a confidential

informant averring that Kahre had security guards at the Kimberly site armed with

machine guns, the IRS determined that the planned searches were "high risk."

Therefore, Defendants appear to argue that the search procedures were justified (i.e.,

the search was "reasonable") based on Kahre's stated beliefs about the IRS and the

information about the probability that he had armed guards at the Kimberly site.  In

response, Kahre argues that Defendants' safety concerns are pretextual and lack

support in the record.  (Resp. at 18.)  He contends that the August 7, 2000 letter

predates the execution of the search warrant by almost three years and other FBI

agents visited the Kimberly site on numerous occasions before the search without

incident.  (Id.)

        First, the record does not reveal that Kahre disavowed his beliefs about

the IRS and his threats that had been advanced in his August 7, 2000 letter.  In fact,

there is nothing to suggest that Kahre no longer had armed guards at the Kimberly

site. Halper was justified in believing that the searches should be classified as "high

risk."

        But even assuming Kahre is correct and that the property damage was

not reasonably necessary to safety execute the search warrants, this assumption still

does not change the fact that Defendants Damm's and Halper's liability is only in a

supervisory capacity.  In other words, even if the search violated the Fourth

Amendment, Defendants can only be liable if they directed or planned the execution

of the search warrant to include the property destruction.  See Taylor, 880 F.2d at

1045.  Anything short of showing that Damm and Halper directed or planned the

property destruction is insufficient.  And because Kahre has not set forth any

evidence raising an issue of material fact with regard to whether Damm and Halper

directed or planned the initial entry causing damage to the gate and trucks,

Defendants are entitled to summary judgment with respect to Kahre's claims regarding that particular property damage.

Kahre alternatively argues that Halper[7] effectively directed or planned the property damage because his "high risk" assessment, which had been predicated on allegedly false safety concerns, ensured that the FBI and NLVPD would damage property at the Kimberly site in the name of "reasonable necessity."  (Resp. at 19 ("Based on Mr. Halper's declaration, it was he who provided the spurious information about the non-existent threat level at the Kimberly and other search locations to the NLVPD and FBI and is thus responsible for the level of force used there and the property destruction that resulted.  Mr. Halper was setting up a scenario where maximum damage would ensue.").)   While a creative argument, it still fails for two reasons.

First, even if Halper had conjured the false safety concerns establishing the "high risk" assessment, that does not mean that Halper directed or planned driving a personnel carrier through a gate at the Kimberly site.  Overstating the safety concerns is a far cry from directing or planning constitutional violations.  The FBI and the NLVPD were free to utilize Halper's information, including the "high risk" assessment, in executing the search warrant to the extent that they in their independent judgment felt were necessary.

---

[7] Kahre does not advance this argument with respect to Defendant Damm.

43

Second, Kahre's argument is essentially predicated on respondeat superior liability because it relies on Halper "setting up a scenario" whereby he is later "responsible for the level of force used there and the property destruction that resulted." (Resp. at 19.)  However, it is well-settled that "[b]ecause vicarious liability is inapplicable to <u>Bivens</u> and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009).

In the absence of any evidence creating an issue of material fact, the Court **GRANTS** summary judgment to Defendants on Kahre's claim regarding damage to the gate and the trucks at the Kimberly site.

2.    <u>Smashing Surveillance Cameras And Doors</u>

Much like their argument regarding the gate and truck damage, Defendants similarly argue that "neither ASUA Damm nor Agent Halper had anything to do with causing damage to the cameras and also, they did not direct anyone else to damage the cameras." (Mot. at 8.)  According to Defendants, Damm had no involvement regarding the execution of the search warrants at the Kimberly site, or any other site for that matter.  (<u>Id.</u> (referencing "Damm Dep.," Dkt. # 410-1, Ex. B 5:21–6:22, Oct. 30, 2013).)  Additionally, Defendants urge that Halper did not even learn about the damage to cameras at the Kimberly site until after the instant litigation commenced.  (<u>Id.</u> (referencing Halper Dep. 45:22–46:6))

44

Kahre does not proffer any facts to contest Damm and Halper's lack of involvement.  Instead, he again reasserts his arguments that the use of force was unnecessary because a legitimate safety risk did not exist.  (Resp. at 20–21.) However, as noted above, whether such force was reasonable is not the relevant inquiry; instead, Kahre needed to produce some evidence to create an issue of material fact that Damm and Halper planned or directed the search warrant execution to include damaging Kahre's property at the Kimberly site.  Having failed to set forth any evidence to that effect with regard to the cameras and doors, Defendants are entitled to summary judgment on those claims.

3.     <u>Prying Open Unlocked File Cabinets And Safes With Crowbars</u>

Kahre concedes that he did not file a claim for the file cabinets or the lockboxes because these items "appear to belong to Mr. Barclay."  (Resp. at 21 ("Mr. Kahre did not assert that he had a direct interest in the cabinets or the lockboxes destroyed at the Kimberly location or that he was making a claim based on their destruction.").)  Given his concession, the Court need not address Defendants' summary judgment arguments with regard to that claim.

CONCLUSION

For the foregoing reasons, the Court **DENIES** Kahre's Request for Additional Discovery and **GRANTS** Defendants' Motion for Summary Judgment (Dkt. # 409).

45

**IT IS SO ORDERED.**

**DATED**:  Las Vegas, Nevada, September 9, 2014.


David Alan Ezra
Senior United States Distict Judge